CORNELIA TOWNSEND v. M. L. SCHADEN, Administratrix of Estate of GEORGE TOWNSEND, Appellant.

Division One, July 5, 1918.

1. **APPELLATE PRACTICE: Weight of Evidence: In Law Case.** A claim against an administrator for the recovery of the value of bonds borrowed by decedent from claimant and never returned, commenced in the probate court and taken by appeal to the circuit court, is an action at law, and if the verdict in favor of claimant is supported by substantial evidence, the trial court is within the law in overruling a demurrer thereto, and it is not the province of the appellate court to pass upon the weight of the evidence.

2. **WITNESS: Competency: Sister of Deceased Donor of Bonds.** Decedent by one letter addressed to two sisters gave one forty bonds and the other twenty, which he afterwards borrowed from them and did not return, and both bring separate actions against the administratrix for the value of the bonds given to them respectively. *Held*, that he made separate and distinct gifts to each, and though the gifts were made in the same transaction, yet as neither had any interest in the bonds intended for the other, neither is disqualified by the statute to testify as a witness for the other in her separate suit.

3. **GIFT: Intention and Delivery: Sufficient Evidence.** Where decedent by letter written in Indianapolis, directed to his sister, stated he was on that day sending to her, as a gift, at Chicago, forty bonds of a named company and of designated numbers, and on the same day entered in his diary a memorandum that he had given her said bonds, there is substantial evidence of his intention to give; and where, instead of sending them to her, by express as he had intended, he took them to the home of another sister and in her presence gave them to the designated donee, and then took them to a safety deposit box, where she found them a week later and where they remained for six months, when he borrowed them from her and by letter to her and by statements made to others admitted he had borrowed them, there is sufficient evidence of delivery, to support a verdict that the gift was complete, both as to intention and delivery.

4. ———: **Self-Serving Testimony.** Declarations or admissions of a donor as to the fact of delivery and as to his intention are admissible to support an alleged gift, but not to impeach his gift. Letters written or statements made by decedent subsequently to the time he made a gift of bonds to his sister, offered for the purpose of showing he had not given them to her, are self-serving and are not competent for that purpose.

5. ———: ———: **Explained By Other Witnesses.** A witness having testified that decedent declared he wished to return the bonds he had borrowed from his sisters, it was not error to refuse to permit another witness, who was present when the declarations were made, to testify that decedent said he was returning the bonds to his sisters for his own use, so that he might use them in case of necessity, because the proffered testimony was self-serving and could not be used to defeat the gift previously made.

6. ———: **Hearsay.** Statements made by decedent, at the time he wrote a letter to his sister in which he distinctly declared he was giving and sending her certain bonds, as to why he was writing the letter, were pure hearsay, self-serving and incompetent, when offered by his administratrix.

7. ———: **Conclusion.** Testimony as to why decedent turned to a diary at the time he wrote the letter of gift is a conclusion of the witness, and incompetent.

8. ———: **Instructions.** Instructions set out in the opinion embodied correct principles of law applicable to gifts *inter vivos*.

9. ———: **Limitations: Five Years.** An action of assumpsit brought by a sister in January, 1914, against the donor's administratrix, for the value of bonds given to her by her brother in October, 1907, and by him borrowed from her in March, 1908, and never returned, where the evidence shows the doner and donee had mutual dealings in regard to the bonds up to and including 1911, was not barred by the five-year Statute of Limitations.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson*, Judge.

AFFIRMED.

*William G. Holt, Haff, Meservey, German & Michaels* and *Beardsley & Beardsley* for appellant.

(1) There was no proof of a gift from George Townsend to the plaintiff of the 40 Water bonds and therefore the court should have directed a verdict for defendant. (a) Giving all possible weight to the testimony offered on plaintiff's behalf, there was no proof whatsoever of a delivery of the bonds in October, 1907. Tomlinson v. Ellison, 104 Mo. 105; In re Estate of Soulard, 141 Mo. 642; McCord's Admr. v. McCord, 77 Mo. 166; Burchett v. Fink, 139 Mo. App. 381; Walter v. Ford, 74 Mo. 195; Harris Banking Co. v. Miller, 190 Mo. 640; Jones v. Falls, 101 Mo. App. 536; Pennell v. Ennis, 126 Mo. App. 355; Doering v. Kenamore, 86 Mo. 588; Citizens Nat. Bank v. McKenna, 168 Mo. App. 254; Gray v. Doubikin, 188 Mo. App. 667; Chambers v. McCreery, 106 Fed. 364; Basket v. Hassell, 107 U. S. 602; Reynolds v. Hanson, 191 S. W. 1030; Liebe v. Battman, 33 Ore. 241, 54 Pac. 179; Knight v. Tripp, 121 Cal. 674, 54 Pac. 267; Apache State Bank v. Daniels, 32 Okla. 121, 121 Pac. 237; 20 Cyc. 1234; 2 Kent. Com. 556; Newman v. Bost, 122 N. C. 524, 29 S. E. 848; Bauernschmidt v. Bauernschmidt, 97 Md. 35, 54 Atl. 637; Millard v. Millard,

221 Ill. 86, 77 N. E. 595; Foley v. Harrison, 233 Mo. 460.
(b) The whole record shows that George Townsend never
intended to make any gift of bonds to his sister in
October, 1907; that the bonds in question were never
treated by him or by her as having been so given and the
attempted proof of a gift falls far short of the character
of proof required to support gifts inter vivos. Foley
v. Harrison, 233 Mo. 460; Northrip v. Burge, 255 Mo.
653; Denny v. Brown, 193 S. W. 552. (2) The alleged
declarations of Townsend made to his relatives and
partner subsequent to October, 1907, are valueless and
ineffectual, because there had been no proof of delivery,
and therefore the trial court should have disregarded
them in passing on the demurrer to the evidence.
Chambers v. McCreery, 106 Feb. 364. (3) The court
erroneously excluded letters and statements of Town-
send made or written subsequently to October, 1907,
showing that he had not given any bonds in 1907 to
plaintiff. Simms v. Saunders, Harper (So. Car.) 374;
Stone v. Stroud, 6 Rich. (So. Car.) 306; Exrs. McKane
v. Bonner, 1 Bail. (So. Car.) 113; Caldwell v. Wilson,
2 Spears (So. Car.) 63; Chambers v. McCreery, 106
Fed. 364. (4) The trial court, having permitted one
of plaintiff's witnesses to relate a particular con-
versation with the deceased, should have permitted the
other witness who was present to give her version of
the same conversation. Harmon v. Insurance Co., 170
Mo. App. 309; Hodges v. Hill, 175 Mo. App. 441; Gourley
v. Callahan, 190 Mo. App. 666; Enyeart v. Peterson,
184 Mo. App. 522; Crawford v. Stock Yards Co., 215
Mo. 416; 16 Cyc. 1039, 1041; Reevs v. Hardy, 7 Mo. 348;
Haver v. Schwyhart, 48 Mo. App. 50, 54. (5) The court
erred in excluding the testimony of Mrs. Schaden as
to what Townsend said at the time when he wrote the
letter which was dated October 25, 1907. Stewart v.
Glenn, 58 Mo. 481; McMahon v. Cronin, 128 N. Y. S.
425. (6) The court erred in striking out certain state-
ments of Mrs. Schaden with reference to the writing of
the letter dated October 25, 1907. (7) The court erred
in giving instructions "A" and "B" of its own motion.

Black's Law Dictionary, "Reasonable;" Foley v. Harrison, 233 Mo. 589; Hunt v. Railroad, 126 Mo. App. 83; Smith v. City of Brunswick, 61 Mo. App. 581. (8) The five-year Statute of Limitation is a bar to plaintiff's claim. (9) Mrs. Davis was an incompetent witness. Sec. 6354, R. S. 1909. (10) The finding of the jury in this case that there was a gift, since it has no foundation in fact upon which it can stand, calls for a reversal outright. Beaver v. Beaver, 117 N. Y. 421, 6. L. R. A. 403, 15 Am. St. 531.

*Lynn S. Pease, Walter F. Mayer* and *H. F. Wieman* for respondent.

(1) The intention of the donor to make a gift is the controlling element and factor to establish a gift. Hamilton v. Armstrong, 120 Mo. 597; Richardson v. Richardson, 148 Ill. 563; Devol v. Dye, 123 Ind. 321; Weaver v. Weaver, 182 Ill. 287; Weber v. Christen, 112 Ill. 91; Rumsey v. Ottis, 133 Mo. 85. (2) The admissions, declarations and acknowledgments of the donor are competent evidence to prove any of the essential elements of a gift. Lord v. N. Y. Life Ins. Co., 66 S. W. (Tex.), —; Crouse v. Judson, 84 N. Y. S., 755; Grangiac v. Arden, 10 Johns. 293; In Re Townsend, 5 Dem. Sur. 147; Estate of Soulard, 141 Mo. 642; Bank v. Miller, 190 Mo. 640; People v. Benson, 99 Ill. App. 325; Sparling v. Smeltzer, 133 Mich. 454; Jacques v. Fourthman, 137 Pa. St. 428; Weaver v. Weaver, 182 Ill. 287; Dehm v. Dehm, 86 Ill. App. 479; Brandon v. Dawson, 51 Mo. App. 237. (3) The delivery of the gift as a manifestation of the intention of the donor may be actual, constructive or symbolical. Delivery may be made to a third person to be by him delivered to the donee. Reese v. Phila. Trust Co., 218 Pa. 150; Hamilton v. Armstrong, 120 Mo. 597; Hageman v. Hageman, 90 Ill. App. 251; Devol v. Dye, 123 Ind. 321; People v. Benson, 99 Ill. App. 325; Shackleford v. Brown, 89 Mo. 546; Sneathen v. Sneathen, 104 Mo. 201; Bickford v. Mattacks, 95 Mo. 547; Grangiac v. Arden, 10 Johns. 293; Hall v. Hall, 76 Kan. 806; Seavey v. Seavey, 30 Ill. App.

625; Telford v. Patton, 144 Ill. 619; Williams v. Latham, 113 Mo. 165; Waite v. Grubbe, 43 Ore. 406; Muir v. Gregory, 168 Fed. 641; Hess v. Hartwig, 83 Kan. 592; Marsh v. Fuller, 18 N. H. 360; In Re Palmer's Estate, 102 N. Y. S. 236; Jast v. Wolf, 130 Wis. 37; Bates v. Vary, 40 Ala. 421; Sparling v. Smeltzer, 133 Mich. 454. (4) The donor may hold the subject of the gift, constructively deliver the property to himself for the donee and thereby put himself in the position of trustee for the donee. The donee need not have possession of the subject of the gift. Harris Bank v. Miller, 190 Mo. 640; Mize v. Bank, 60 Mo. App. 358; Hamilton v. Armstrong, 120 Mo. 597; Yokem v. Hicks, 93 Ill. App. 667; Martin v. Funk, 75 N. Y. 134; Grangiac v. Arden, 10 Johns. 293; Trowell v. Carroway, 10 Heisk. 104; Dressen v. Dressen, 46 Me. 48; Bants v. Ellis, 17 Beav. 121; Gamian v. McGuire, 160 N. Y. 476; Crouse v. Judson, 84 N. Y. S. 755. (5) The questions of intention and delivery are exclusively within the province of the jury. The jury may presume intention and delivery from the facts and circumstances, admissions, declarations and acknowledgments of the donor. Reynolds v. Hanson, 191 S. W. (Mo.) 1030; Fair v. Wynne, 155 Mo. App. 341; Sparling v. Smeltzer, 133 Mich. 454; Jacques v. Fourthman, 137 Pa. St. 428; Clough v. Clough, 117 Mass. 85; Hunt v. Hunt, 119 Mass. 474; Keeney v. Henrick, 148 Pa. St. 223; Sprouse v. Littlejohn, 22 S. C. 358; Grangiac v. Arden, 10 Johns. 293. (6) The appellate court will not weigh the evidence and set a verdict aside as against the weight of the evidence. Reynolds v. Hanson, 191 S. W. (Mo.) 1030; Shackleford v. Brown, 89 Mo. 546. (7) Mrs. Davis was a competent witness. Snider v. McAtee, 178 S. W. (Mo.) 484; McKee v. Downing, 224 Mo. 115; Cole v. Waters, 164 Mo. App. 567; Morvell v. Cooper, 155 Mo. App. 445; Weiermueller v. Scullin, 203 Mo. 467; Gray v. Doubikin, 188 Mo. App. 667. (8) Conversations with and letters written by the deceased which were not declarations or admissions against interest are not competent evidence. Baker v. Baker, 43 Ind. App. 26; Hitt v. Hitt, 131 S. W. (Mo.)

369; Dalby v. Maxfield, 244 Ill. 214; Tyler v. Wright, 164 Mich. 606; Reese v. Trust Co., 218 Pa. 150; Church v. Comb's Ex'r, 113 S. W. (Ky.) 119; Mahan v. Schroeder, 142 Ill. App. 538; Dillivan v. Savings Bank, 124 N. W. (Ia.) 350; Driscoll v. Driscoll, 143 Cal. 528. (9) The court properly instructed the jury that "the plaintiff must prove to your reasonable satisfaction by the greater weight of all the credible evidence," etc. Jones v. Park, 101 Mo. App. 536; Reynolds v. Hanson, 191 S. W. (Mo.) 1030. (10) The five-year Statute of Limitations does not apply in this case.

RAILEY, C.—This action was commenced in the probate court of Jackson County, Missouri, on January 8, 1914, in the following form:

"Estate of George Townsend, deceased, to Cornelia Townsend, debtor,

| | |
|---|---|
| "To one hundred shares of the Central States Bridge Company, par value one hundred dollars ................................ | $10,000 |
| "To thirty-two bonds, Citizens Street Railway Company, Indianapolis, par value one thousand dollars ........................... | 32,000 |
| "To eight water bonds, City of Indianapolis, Indiana, par value one thousand dollars . | 8,000 |
| "Total ............................... | $50,000" |

Before the case was finally submitted to the jury, plaintiff reduced her demand for the par value of the thirty-two Citizens Street Railway Company bonds, of Indianapolis, Indiana, from $32,000 to twelve of said bonds of the alleged value of $12,000. She also withdrew from the consideration of the jury, as shown by her instruction "D," that part of her claim relating to the one hundred shares of the Central States Bridge Company, of the alleged value of $10,000.

From the judgment of the probate court in favor of defendant, plaintiff appealed to the circuit court, where the case was tried *de novo*, at the November Term, 1914, before a jury. The trial began on January

5, 1915, and thereafter resulted in a verdict for plaintiff in the sum of twenty thousand dollars, upon which judgment was entered in due form.

There was substantial evidence offered upon the part of plaintiff tending to show that George Townsend, who was a brother of plaintiff, on or about the 25th day of October, 1907, had met with success as a railroad builder, and had accumulated at that time valuable bonds and notes of the face value of $250,000; that he and plaintiff were twin sister and brother, and that for many years they made their home with their sister, Mrs. Anna Townsend Davis; that plaintiff and her brother George were dear to each other, and traveled a great deal together.

Plaintiff introduced in evidence her Exhibit 6, shown to have been in the handwriting of George Townsend, which reads as follows:

"Indianapolis, Oct. 25, '07.

"My dear Sisters:

"I have this day paid off my loan at the Fletcher Bank and am not now honestly in debt to anyone in the world and I am entirely out of business. I have now in my safe deposit box at Fletchers, 150 Indpls Water, Citizens Ry and other bonds paying me 5% interest, besides 100 New Orleans Ter. Notes in the 1st Natl Bank of N. Y. and other investments, and so I have decided to carry out my long promised intention made so often to you and Nellie of adding to the bonds you already have so that you will both be provided for should bad luck come to me or in case of my marriage and so I will today take with me or send to you in Chicago, as a present sixty (60) of the Water and Citizens bonds, Forty (40) of which will be for Nellie and twenty (20) for Anna, because Nellie is more dependent on me than you are. You must take good care of these bonds and do not change the investment into other bonds or stock without first advising with me. These bonds all pay 5% per annum; the water bonds sell around par and the Citizens sell a few points higher but I consider them equally safe as an investment. You can divide the two kinds as you see fit so that Nellie gets a total of 40 and you get the 20. I take pleasure in doing this as it will still leave me a sufficient income.

"Love to you both,
BROTHER GEORGE.

"This is a list of the numbers of the bonds I am giving you so in case anything happens in transit payment might be stopped. The 40 Water bonds numbers 76, 77, 196, 311, 312, 352, 1413, 1885, 1942 to 46, 1975 to 79, 2011, 2013, 2013, 2094, 2096, 2097, 2107 to 11, 2134, 2135, 2144, 2145, 2148 to 53 and 2202. The 20 Citizens bonds are numbered 6, 24, 25, 26, 27, 133, 134, 142 to 145, 284, 290, 393 to 397, 402 and 403.

GEORGE.

"Since writing the above I find it is too late to express these bonds and catch my train so I will leave them here at Fletchers and put a slip in the pkg of 40 water bonds as being the private property of Nellie and a slip in the pkge of 20 Citizens bonds as being the property of Anna and I will either continue to hold them here for you or send them to you at a later date.

Yours,<br>GEORGE."

A book was identified by Mrs. Davis, as a diary of George Townsend, and in his handwriting, under dates of October 24-5-6. It was introduced in evidence, and read as follows:

"(October 24th.)

"Arrived in Indianapolis at 3:05 p. m.
"Took dinner with Mrs. Schaden.
"Took room at Columbia Club.

"(October 25th.)

"Paid Fletcher my last loan and put 35 Water, 15 Citizens 30 N. W. & 10 U. T. bonds in my deposit box. Took 40 Water & 20 Citizens as a present to my Sisters in Chicago. Arrived home at 8:00 p. m.

"(October 26th.)

"Gave Sister Nellie 40 Water bonds and to Sister Anna 20 Citizens. Had hair cut in the p. m. Played cribbage at home in the evening with the folks."

Mrs. Davis identified "Exhibit 8" as in the handwriting of her brother George, and says she received it through the mail. It was offered in evidence and reads as follows:

"Grand Hotel,

Indianapolis,

January 3rd, 1910

"My dear Sisters:

"It is with a feeling of great relief that I am sending back to you today by Am. Express thirty-two of the $1,000 bonds of the Citizens 5.s Street Ry. being a part of the 60 bonds that I took from those belonging to you in the safety deposit box in Chicago.

"I will send you 18 more bonds tomorrow and the remaining 10 bonds shortly.

"I want Nellie to receive back these 32 bonds and Anna can take her 20 out of the remainder I am to send.

"I trust you will forgive me for having taken the 60 bonds away from you against your protest. Please put these 32 bonds in a box in your own names.

With love,

GEORGE."

Mrs. Davis testified that the 32 bonds referred to in above letter were delivered to herself and plaintiff; that she handed them to George Townsend and they were put in the box. This occurred some time in December, 1909, or early in January, 1910; that these 32 bonds, in September, 1911, were sent by her to defendant for George Townsend; that this was the last time she ever saw them; that she could not give the exact date when she received Exhibit 6, supra, nor whether she had it in her possession before the death of her brother George; that she found it in the desk at home with other papers within the last year. Witness said her brother George felt grieved over plaintiff's health, and gave her seventeen bonds for her *immediate* wants, and said he would add three more to them, and that he would have that amount taken from the will; that plaintiff still has the seventeen bonds.

On cross-examination, Mrs. Davis testified that her brother George was a railroad builder, and had built many railroads; that he was a careful and successful business man; that he engaged in building railroads in Indianapolis, Michigan and the Holy Land; that he also built part of the Canadian Pacific road; that the first time she recalls having seen Exhibit 6 was in May, 1910; that it was then in her husband's desk in her room; that her brother George was very ill in January and Febuary, 1910, and went to a sanitarium; that he had a nervous breakdown; that plaintiff never had any bonds prior to October 25, 1907.

Mrs. Davis testified in chief that in October, 1907, her brother George came to her house, and in the presence of plaintiff said he had brought to Cornelia

forty Water bonds, and twenty for her; that they thanked him, and he then said they should be taken right over to the safe deposit; that the above occurred about 8:30 o'clock in the morning; that she did not see the bonds, but simply the package; that he took them out of his satchel, put them in his pocket, and left; that she did not see the bonds until about one week afterwards, when she saw them in the box at Commerce Safety Deposit Company; that she had access to the box; that she had two boxes, and had the only key to each box at that time; that she had had the key since 1905; that when she went to the bank about one week after the above conversation, she then saw one package containing 40 Water bonds and one containing 20 Indianapolis Railway bonds; that the memorandum on the package was in the handwriting of her brother George. Witness testified that while she and her brother George were in the South, he spoke of the pleasure it had afforded him to have Cornelia provided with an income-bearing fund. This was in January, 1908. The bonds remained in the deposit box until March, 1908, when they were borrowed by her brother.

*Ward S. Arnold,* former partner of George S. Towsend, met the latter in Chicago in March, 1908. He testified that George then told him that "he had given his sisters a considerable amount of bonds, and that to raise the amount of money that would be required he would have to borrow these bonds back." He said, George then told him that "he had given Cornelia a considerable sum, more than his sister, Mrs. Davis, due to the fact that she was single and had no one to help look after her, like her other sister, Mrs. Davis." etc.

*Wm. R. Townsend* testified that in September, 1908, his brother George told him that "he had presented his sisters with enough bonds to keep them comfortably until the end of their lives." He said he was then in condition to do so. On cross-examination, witness said George told him in 1909 he had provided for his brothers and sisters in his will and that he was worth $250,000 to $300,000. He said that George talked

with him during the last days of December, 1909, and told him he was going to Indianapolis and get the bonds that were there, buy some more, and replace some he had *borrowed;* that he was afraid he would die and not leave them in possession of his sisters.

*Edward Waterman Townsend* testified that near the end of the year 1907 his brother George talked with him about Cornelia; that he then said, he had provided by gift, a provision which would provide means of a living for his sister.

The testimony of Mrs. Davis tends to show that George Townsend *borrowed* from her sister, Cornelia, the 40 bonds of plaintiff and took them with him. Witness said she never saw the bonds after that, but she got the 32 Citizens Street Railway bonds from the bank; that they were sent by express from her brother George, for Cornelia. These are probably the bonds referred to in Exhibit 8, heretofore quoted. Mrs. Davis said her sister Cornelia protested against her brother George going into business again, on account of his health, but told him "the bonds are here safe and we are perfectly willing to lend them to you, but we merely protest on account of your health," and he said he would take them with him.

We have simply set out enough of the testimony to show that plaintiff's demand is sustained by substantial evidence relating to the main issues before us. Some of the foregoing facts are controverted by testimony elicited on behalf of appellant.

The instructions given and refused, and such other matters as may be deemed important, will be considered in the opinion.

On January 12, 1915, nine of the jurors returned a verdict in favor of plaintiff for $20,000, and judgment was entered in due form thereon. Motions for new trial and in arrest of judgment were filed, overruled, and the cause duly appealed by defendant to this court.

I. It is claimed that at the conclusion of plaintiff's evidence, and at the conclusion of the whole case, defendant's demurrer thereto should have been sustained.

We have shown from the preceding statement that respondent was well fortified at the trial with substantial evidence tending to prove the main issues in the case. As this is an action at law, it is not the province of the court to pass upon the weight of the evidence. [Minor v. Burton, 228 Mo. 1. c. 564; Slicer v. Owens, 241 Mo. 1. c. 323; Abeles v. Pillman, 261 Mo. 1. c. 376; Buford v. Moore, 177 S. W. (Mo.) 1. c. 872; Kille v. Gooch, 184 S. W. 1. c. 1160; Truitt v. Bender, 193 S. W. (Mo.) 839; Coulson v. La Plant, 196 S. W. (Mo.) 1. c. 1146.]

*Demurrer to Evidence.*

The trial court was within the law in overruling the above demurrer.

II. The trial court is charged with error in permitting Mrs. A. T. Davis to testify as a witness in behalf of plaintiff. It is conceded that she has a similar suit against the same defendant now pending in Division Two of this court.

It is contended by appellant that there was no gift of the bonds to either Mrs. Davis or plaintiff, on October 26, 1907, but that, if there was a valid delivery of the bonds, under the circumstances heretofore set out, it was a joint gift, which took place as part of a single transaction, and, hence, rendered Mrs. Davis an incompetent witness, under the statute, as her brother was then dead. On the other hand, it is contended by respondent that the correspondence read in evidence, in connection with the other facts, and what occurred on October 26, 1907, constituted separate gifts of different bonds. That is to say, the 40 Water bonds were intended for plaintiff, and the 20 Street Railway bonds for Mrs. Davis.

*Competency of Witness.*

Let us assume for the sake of the argument that decedent, in the same transactions, intended to give and did give 40 of the Water bonds to plaintiff and the

20 Railway bonds to Mrs. Davis. On this state of facts, if said bonds had passed into the hands of defendant upon the death of George Townsend, it is plain that each of said donees could have recovered the possession of her respective bonds in an action of replevin. Even if the 60 had *all* been Water bonds, of the same value, plaintiff could have maintained an action of replevin for 40 of same, and Mrs. Davis could have recovered the remainder. [In re Estate of Largue, 267 Mo. l. c. 116-17, 183 S. W., l. c. 611.]

The question under consideration recently came before Division Two of this court in Snider v. McAtee, 178 S. W. 484. It appears from the opinion that Mr. Sperling was offered as a witness in behalf of plaintiff. Defendant objected to his testifying in the cause, on ground that he, Mr. Snider, and Mr. Schwab, were all parties to the same contract with Mr. Quinn, and that, as Quinn was dead, Sperling was incompetent to testify by reason of the provisions of Section 6354, Revised Statutes 1909. Judge WILLIAMS wrote the opinion, while a Commissioner, in which all the members of said Division concurred. On page 488, he said:

"We have reached the conclusion that the witness was not a party to the contract or cause of action in issue and on trial in this case. The evidence shows that all of the three purchasers were present in the bank at the time Quinn sold the 65 shares of stock. But it appears, we think, clearly, from the evidence, that, before the sale was made, each purchaser, for himself, decided upon the number of shares he would purchase. The transfer of the stock was made separately to each individual purchaser, and each purchaser respectively paid Quinn for the shares so purchased."

It was held that Sperling was a competent witness, under the circumstances aforesaid.

In the case at bar, it appears from the diary kept by George Townsend, under date of October 26, that he "gave Sister Nellie 40 Water bonds and to Sister Anna 20 Citizens." While he usually addressed his

sisters jointly, it is manifest from what he said, and did, that he was making separate and distinct gifts to each, and that neither had any interest in the bonds intended for the other.

The question under consideration is similar in principle to that involved in the Snider case, supra. The rule as announced in the latter meets with our approval. There is nothing contained in Section 6354, Revised Statutes 1909, which would warrant us in excluding Mrs. Davis as a witness in this cause, on the record before us.

III. It is contended by appellant that:

"There was no proof of a gift from George Townsend to the plaintiff of the 40 Water bonds and therefore the court should have directed a verdict for defendant."

The testimony heretofore set out indicates a clear intention upon the part of George Townsend on October 25, 1907, to give plaintiff 40 of his Water bonds. Without repeating the testimony, it is plain that the jurors had before them substantial evidence, tending to establish the following facts: That on October 25, 1907, George Townsend fully intended to give plaintiff 40 of his Water bonds; that he took said bonds with him to Mrs. Davis's house on October 26, 1907, and told plaintiff in the presence of Mrs. Davis that he had brought her the 40 bonds; that he gave them to her, and took them to the safety deposit box; that one week thereafter, plaintiff and her sister found the bonds at the bank; that one package contained 40 Water bonds and the other package 20 Railway bonds; that the 60 bonds remained in the bank until March, 1908, when George Townsend borrowed them from plaintiff and her sister; that he never returned the same; that on January 3, 1910, he wrote Exhibit 8, heretofore set out, in which he admitted the receipt of said bonds, and that they belonged to plaintiff and Mrs. Davis. In Exhibit 8, he further stated:

*Gift: Intention and Delivery.*

"I want Nellie to receive back these 32 bonds and Anna can take her 20 out of the remainder I am to send.

"I trust you will forgive me for having taken the 60 bonds away from you against your protest."

Where the facts are known and unquestioned, and where but one conclusion can be drawn therefrom, the court may, as a matter of law, on the evidence adduced, declare that no delivery has taken place. The law, however, as applied to facts like those before us, is forcefully stated in 12 Ruling Case Law, sec. 46, pages 974-5, as follows:

"The question as to what constitutes a gift is a question of law, and on facts in a particular case it involves a mixed question of law and fact. On the testimony it is the province of the jury to determine whether there was a clear intention to make a gift, and whether that intention was carried into effect by such a delivery as would make a completed gift. This is so as to a gift *causa mortis* as well as to one *inter vivos.*"

The rule above announced is substantially in accord with the views of this court as heretofore expressed. [Harvey v. Long, 260 Mo. 1. c. 386, and cases cited; Schooler v. Schooler, 258 Mo. 1. c. 91-2; Miles v. Robertson, 258 Mo. 1. c. 724, and following; Burke v. Adams, 80 Mo. 1. c. 511; 8 Ruling Case Law, sec. 50, page 980.]

In the Burke case supra, Judge PHILIPS, while a Commissioner of this court, on page 511, very clearly stated the law as applied to the facts of this case, as follows:

"What constitutes a delivery of a deed is often a mixed question of law and fact. An arbitrary rule ought not to be laid down. Each case must stand more or less on its peculiar facts. The intent to convey is evidenced by the act of making out and duly executing and acknowledging a deed. The delivery may be evidenced by any act of the grantor by which the control, or dominion, or use of the deed is made available to the grantee. It is not necessary that it should be handed

over actually to the grantee, or to any other person for him. It may be delivered under certain circumstances, though it remain in the possession of the maker. Where, however, there is not an actual transfer from the grantor to the grantee, it should affirmatively appear from the circumstances, acts or words of the parties, that the intention to pass the title really existed.''

In the case at bar, there is abundant evidence of an intention upon the part of George Townsend to deliver the 40 Water bonds to plaintiff. The testimony shows: He had withdrawn these bonds from the bank to deliver to her; that he formally declared he had brought them to her; that he exercised proper care in not leaving such a large amount of securities in her hands, but took them to the custodian of the vault for her; that she got them from the vault within a week afterwards, and they remained there until her brother borrowed them from her, and never returned the same. He recognized, in writing, her ownership of the bonds, and replaced 32 of the 40, with Railroad bonds. On this state of facts, the jury were warranted in finding that the 40 Water bonds were given to plaintiff, and in contemplation of law, were delivered to her.

(a) In 12 Ruling Case Law, sec. 45, pages 973-4, it is written:

''Declarations of the donor, especially if repeatedly made, are sufficient on which to establish a title by gift, and declarations of a donor that he had delivered a gift are sufficient evidence of its delivery, particularly where he had previously expressed his intention to give, and was under a moral obligation to make the gift.''

(b) We have carefully considered the law relating to the question of delivery, as shown by the authorities cited in Wren v. Sturgeon, 184 S. W. l. c. 1038-9, where we held that no delivery was shown by the evidence. Without considering the question further, we are of the opinion that the trial court committed no error in overruling appellant's demurrer to the testimony, in respect to above matter.

IV. Appellant claims, that "the court erroneously excluded letters and statement of Townsend made or written subsequent to October, 1907, showing that he had not given any bonds in 1907 to plaintiff."

If any such letters were written, or statements made by George Townsend, subsequent to October, 1907, and they were offered in evidence for the purpose of showing that he had not given any bonds in **Self-Serving Declarations.** 1907 to plaintiff, they were properly excluded as self-serving declarations and incompetent for that purpose. [O'Day v. Annex Realty Co., 191 S. W. (Mo.) l. c. 46 and cases cited; 12 R. C. L. Section 43, p. 971; Tyler v. Wright, 164 Mich. 606; Dalby v. Maxfield, 244 Ill. 214; Reese v. Trust Co., 218 Pa. 150; Driscoll v. Driscoll, 143 Cal. 528; Baker v. Baker, 43 Ind. App. 26; Dillivan v. German Savings Bank, 124 N. W. (Ia.) 350.]

In O'Day v. Annex Realty Co., 191 S. W. l. c. 46, in considering this question, we said:

"Aside, however, from the foregoing potent objection to a single page of this diary being considered as competent evidence we find that the contents of same does not purport to be an admission contrary to the interests of defendants and M. B. O'Reilly. On the contrary, this diary was offered for the express purpose of overturning the constructive trust sought to be established by plaintiff on May 26, 1898, when the quitclaim deed was delivered. It was also offered to show that an entirely different agreement had been made from that claimed by plaintiff, and which was more favorable in its terms to O'Relliy and the defendants. The cases relied upon by respondents hold that the admission of a party, against his interest when made, may, under certain circumstances, be given in evidence, but they have no application to the facts of this case, for the reasons aforesaid. On the contrary, the page of diary offered in evidence must be classed as a self-serving declaration of M. B. O'Reilly and inadmissible for any purpose. [Laclede Land & Improvement Co. v. Goodno, 181

S. W. l. c. 413; Elliott v. Sheppard, 179 Mo. l. c. 390, 78 S. W. 627; Wilcoxson v. Darr, 139 Mo. l. c. 673, 41 S. W. 227; Coombs v. Coombs, 86 Mo. l. c. 178; Manion Blacksmith Co. v. Carreras, 19 Mo. App. 162; Gregory v. Jones, 101 Mo. App. 270, 73 S. W. 899.]''

In 12 Ruling Case Law, sec. 43, page 971, the rule of law in respect to this matter, is stated as follows:

''The declarations or admissions of a donor as to the fact of delivery and as to his intention are admissible to support an alleged gift, but not to impeach his gift.''

The above contention is clearly without merit and is overruled.

V. Appellant insists that ''the trial court, having permitted one of plaintiff's witnesses to relate a particular conversation with the deceased, should have permitted the other witness who was present to give her version of the same conversation.''

Explaining
Gift.

The above contention is based upon the testimony of William R. Townsend, who testified, in substance, that in September, 1907, George Townsend, in a conversation with his secretary, said if he collected a certain sum of money from Wyandotte County he would go to Indianapolis, take up thirty-two bonds, purchase eighteen more, and give them to his sister. This testimony was stricken out, and the witness corrected his evidence by stating the following:

''A. I certainly knew they were borrowed bonds.

''The Court: You say you knew? A. He said he wished to return the bonds he had borrowed from his sisters. I think the total was more than that. . . .

''He was very glad that he was able to return to his sisters fifty of the bonds that he had borrowed from them.''

The defendant testified that she did not think William R. Townsend heard the conversation; and that the above conversation, testified to by William R. Town-

send, did not occur. Her counsel then sought to prove by her that George Townsend said he was returning certain bonds to his sister for his own use, so that he might use them in case of necessity. This offer was obtained to as incompetent, because it was a self-serving statement and could not be used to defeat the gift. The other testimony sought to be elicited from her related solely to a self-serving declaration of George Townsend, and under the authorities heretofore quoted from was incompetent and properly excluded. This contention is likewise without merit.

VI. The trial court is charged with error in "excluding the testimony of Mrs. Schaden as to what Mr. Townsend said at the time when he wrote the letter which was dated October 25, 1907." The letter

Hearsay. referred to is Exhibit 6, set out in the statement. Defendant testified that this letter was written in 1909, and not in October, 1907. She was then asked the question: "Did Mr. Townsend make any statements to you at the time he wrote that letter as to why he was writing that letter?" The testimony sought to be elicited, was purely hearsay, self-serving in character, and clearly incompetent.

VII. The court is charged with error "in striking

Conclusion. out certain statements of Mrs. Schaden with reference to the writing of the letter dated October 25, 1907."

The question propounded reads as follows: "Q. State to the jury what he [Townsend] did. A. At the time he asked me for the letterhead, he asked me to get the diary in an old suitcase and he turned back to see when he was in Indianapolis and wrote the letter to correspond with the date."

Counsel for plaintiff objected to that portion of the above answer, as to why he turned back to the diary, as being a conclusion of the witness. The objection was sustained, and properly so. She then testified fully as to what she saw him do with the diary.

The above contention is devoid of merit and is overruled.

VIII. Appellant contends, that the "court erred in giving instructions 'A' and 'B' of its own motion."

These instruction read as follows:

"A. You are instructed that if you find that George Townsend made a gift as defined in other instructions herein of these bonds to his sister Cornelia,

Instructions.   on or about October 26, 1907, then her title to or ownership of said bonds at said time cannot be affected by the subsequent possession of the same by George Townsend nor by his using or selling them.

"B. The court instructs the jury, if you believe from all the evidence that George Townsend made a gift as defined in other instructions herein, of forty Water bonds to his sister Cornelia in 1907, and thereafter on or about the month of March, 1908, borrowed said bonds from said sister, and that he sold said bonds and returned to her in January, 1910, thirty-two Citizens Street Railway bonds of the par value of $1000 each, instead of thirty-two of those he sold, then the plaintiff is entitled to recover from the defendant in the amount of $1000 for each of the eight bonds not so replaced."

We are of the opinion that the above instructions properly declare the law in a case of this character, and that they presented both sides of the controversy fairly to the jury. The case of Foley v. Harrison, 233 Mo. 460, so strongly relied on by appellant, involved the question of *donatio mortis causa.* The court in that case was not discussing instructions, but the law as applied to that kind of an action. In considering the merits of the case, WOODSON, J., on page 582, said: "It is conceded by all the authorities, that a greater weight of evidence is required in this class of cases than is required in ordinary cases, in order to receive the sanction and approval of the courts of the country. This must be true in the very nature of the transaction,

and is based upon a wise public policy." We have no fault to find with the able and exhaustive opinion in the Foley case, as applied to the facts there considered, but do not deem the rule enunciated therein applicable to the facts under consideration here. The above instructions, are, in our opinion, in line with the principles of law declared in the cases cited under Proposition III, supra. The question now raised in reference to said instructions "A" and "B" appears to have been an afterthought, as defendant, in her instructions five and six, refused by the court, presented no such issue.

The foregoing contention of appellant, is not well founded and is accordingly overruled.

IX. It is insisted by defendant that "the five-year Statute of Limitations is a bar to plaintiff's claim." There is no merit in this contention. The evidence shows that plaintiff and her brother, George Townsend, had mutual dealings in regard to these bonds up to and including 1911. This suit was brought January 8, 1914, as an action in assumpsit, for the value of the bonds loaned to George Townsend by plaintiff and which were used by him in his business. [Henderson v. Koenig, 192 Mo. l. c. 709 and cases cited.] There was no testimony adduced at the trial which would have warranted the jury in finding that the five-year Statute of Limitations had barred plaintiff's right of recovery.

*Limitations.*

X. We have carefully examined all the questions presented for our consideration. Some of the authorities cited by appellant upon the subject of gift, relate to testamentary disposition and are not in point. In many of the cases cited upon the subject of delivery, there was no substantial evidence of delivery shown. In still other cases relied on the donors expressly reserved title, and dominion.

*Comparison of Decisions.*

We are satisfied with the legal principles heretofore considered, which should govern this case. Find-

ing no errors in the record of which defendant can legally complain, we affirm the judgment.

PER CURIAM.—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur, except *Woodson, J.,* not sitting; *Bond, P. J.,* concurs in result.