J. M. FEIGENBAUM, Receiver of VANCOH REALTY COMPANY, a Corporation, v. JULIUS R. VAN RAALTE, Appellant.—No. 39926.— 201 S. W. (2d) 283.

Division One, March 10, 1947.

Rehearing Denied, April 21, 1947.

*Kerth & Schreiber* for appellant.

68

*S. C. Rogers* for respondent.

HYDE, J.—This is an action on an account, tried without a jury. Plaintiff had judgment for $117,855.43. (Balance due $105,166.33; interest $12,689.10) On motion for new trial a remittitur of $25,856.66 was ordered and made. Defendant has appealed from the final judgment entered.

Plaintiff has filed a motion to dismiss the appeal. Defendant's brief does not fully comply with our rules (the statement of facts is neither properly made nor in the proper place) and his transcript does not correctly show the final amended judgment entered after remittitur. Because we find merit in defendant's appeal, we have on our own motion ordered the Clerk to send up this judgment and have thus determined that it was properly entered. [See Rules 1.03, 1.15, 1.28 and 3.27] We, therefore, overrule this motion.

The Vancoh Realty Company was incorporated about 1904 and was engaged in buying and selling notes and mortgages. The owners were Simon Van Raalte and Abe Cohen, who were its principal officers. Defendant was the son of Simon Van Raalte who was president of the Company. He had an arrangement with Vancoh to buy deals he procured for it. He was never a director or stockholder of Vancoh and was never paid a salary. He was paid (at one time 25% and at other times 33 1/3%) out of the profits which Vancoh would make on each deal it accepted from him. He testified that, when a deal (usually to buy securities at a discount) procured by him was accepted, he would be furnished with a statement of the amount of his commission on such deal and that after some of these had accumulated he would be paid either by check or by the company's note. He said that there was no agreement for any of these commissions to be charged back against his account after such transactions had been accepted by the company, regardless of whether or not they were eventually liquidated in full. This was corroborated by Simon Van Raalte, who was 91 years old at the time of the trial. Defendant also said that prior to the nineteen-thirties Vancoh never had any loss on a

deal. He further stated that he never received anything more from Vancoh than the amounts due him for commissions or on notes given to him for such commissions or for loans made by him to the company.

In 1926, defendant became the representative of the Investor's Syndicate of Minneapolis and handled its business in addition to soliciting business for Vancoh. During the nineteen-twenties Vancoh made profits of as much as $300,000.00 per year. After 1930 its earnings and activity diminished and it had losses on some of its mortgages and took in real estate on foreclosures. Defendant said that both he and his wife then made loans to the company to furnish money for expenses during this period and received its notes, some of which were never paid. The bookkeeper for Vancoh was Charles A. Hahn, who was also secretary of the company. The owners of Vancoh were also the owners of two other companies, the Pine Investment Company and the Greendale Realty and Construction Company. Hahn also kept their books and they all used the same offices in the Arcade Building in St. Louis.

In 1938 defendant established an office in Clayton where he carried on his business for the Investor's Syndicate under the name of the Van Raalte Mortgage Company. Vancoh and the other affiliated companies were unable to keep the offices in the Arcade Building and moved into defendant's offices in Clayton. Thereafter Abe Cohen died and his executor employed E. H. Harris in August 1939 to examine the books and records of Vancoh. Hahn, who had charge of the books, refused to let Harris see them, first saying that he was behind with his work and later saying that he was busy working on them for income tax purposes. Hahn then told him that he would have no one fooling with his books. Hahn was killed in an automobile accident about May of 1940. The Vancoh records remained in defendant's office until August 8, 1940, when plaintiff was appointed receiver for Vancoh by the circuit court. Harris then presented a letter from the receiver to defendant requesting that all the records of Vancoh be surrendered to him and defendant permitted Harris to take all of them. Harris said that many of the Vancoh records were stored in an office in St. Louis and that he had not had time to examine all of them. Defendant said that he had nothing to do with keeping the books, had never looked at them prior to turning them over to Harris and did not know what they contained.

Defendant said that Ann Fine, assistant bookkeeper to Hahn, told him in the early part of 1939 that the books kept by Hahn showed a large indebtedness due from him to Vancoh. He said he asked Hahn about this and he said: "I have to have some way to balance my books—I have some charged, but what do you care? Nobody owns this business but your father or Mr. Cohen—go to see them." He also said that he asked Hahn to correct it and Hahn said: "Of

course I will . . . nobody sees these books but me. I won't show them to anybody.'' Simon Van Raalte also testified that he told Hahn to correct the books and said that defendant did not owe Vancoh anything. Defendant also said he told Harris that he did not owe the company but that the company owed him; and that Harris said ''that is Hahn's cockeyed way of keeping the books.''

Harris was the only witness for plaintiff and he knew only what was shown by the books and records of Vancoh. He had no personal knowledge as to when any of the entries were made or whether they were true and correct. He identified them as being in Hahn's handwriting, except for part of the first year shown, 1924. He said that pencil memorandums were made of transactions at the time they occurred and that these were put on the books by Hahn later. Some of these memorandums were among the Vancoh records turned over to him but were not produced at the trial. After he had examined the books, Harris asked for the Vancoh bank statements and cancelled checks but Miss Fine told him that she and Hahn had destroyed them two years ago. Harris also said that the books were not correct in some respects because they showed, as assets, mortgages and real estate which Vancoh did not own.

The books produced as evidence at the trial, which are filed here, show that three separate loose-leaf records were kept. ▮▮▮ They were the record of cash paid out, record of cash received and the journal which contained only entries of items other than cash receipts and disbursements. There were also ledger sheets showing various accounts of defendant and his wife. These ledger sheets show the following accounts: a Joyner Realty Company deal account for 1926, which balances, showing nothing due; a bills payable account of defendant, 1927 to 1930, which also balances leaving nothing due; a bills payable account of defendant's wife, 1926 to 1938, which shows a balance due her of $7410.58; a collateral account of defendant for 1930, which shows a balance due from him of $14,164.00 (this amount was included in the judgment against him); the main account against defendant, referred to as a withdrawal account, purporting to be from 1924 to 1939, which shows a balance due from him of $91,002.33 (which was also included in the judgment against him and from which the items constituting the remittitur were deducted); and also unearned commission accounts (on both the 25% and 33 1/3% basis), from 1934 and 1937, which show balances in defendant's favor aggregating $50,117.59. No credit was given defendant for this amount in computing the amount due from him for which judgment was rendered against him. Unearned commissions were explained by Harris as follows: ''Obtaining profits on a piece of property that is purchased for an amount less than market value of it. For instance, a note received for $10,000.00 and taken in at actual cost of $6,000.00, it is customary to set that up or record that on the books as notes receivable $10,000.00 and unearned

commissions $4,000.00. The cash outlay was $6,000.00.'' In short, this commission would be considered unearned until this note was collected.

█ It also appears from defendant's ledger account (withdrawal account) and the journal entries from which the items were taken, and from the testimony of Harris, that some of the largest items charged against defendant were for notes given to him by Vancoh for commissions due him. Apparently also some payments to him on these notes were likewise charged against him; and in one instance a balance due him was added into the year's total (1926) although included in a note given to him. Other large items charged against him were payments shown to have been made to other persons (some of which were included in the remittitur) and charges to reverse commissions paid to defendant in previous years. Some of these matters cause us to doubt the accuracy of the books relied upon to show the true state of the accounts between defendant and Vancoh. Defendant contends that plaintiff's showing was not sufficient as to the accuracy of the books, or as to the entries therein being contemporaneously made with the transactions, to make them admissible, citing McKelly v. Metco Products, Inc., 354 Mo. 993, 193 S. W. (2d) 28 and similar cases; See also Gordon & Koppel Clothing Co. v. New York Central R. Co. (Mo. App.), 285 S. W. 755; 32 C. J. S. 556, Section 684; 20 Am. Jur. 920-928, Sections 1069-1072. However, it is not necessary to rule on the admissibility of these books on this ground or to decide what balance they do actually show between the parties because of the view we take on the defense of the statute of limitations.

█ Plaintiff's suit was commenced December 23, 1943. The five year statute of limitations, Section 1014, R. S. 1939, Mo. Stat. Ann. applies to accounts; but Section 1019, R. S. 1939, Mo. Stat. Ann. provides that ''in an action brought to recover a balance on a mutual, open and current account, . . . the cause of action shall be deemed to have accrued from the time of the last item in the account on the adverse side.'' [See Ring v. Jameson, 66 Mo. 424; Chadwick v. Chadwick, 115 Mo. 581, 22 S. W. 479; Townsend v. Schaden, 275 Mo. 227, 204 S. W. 1076; Scheer v. Trust Co. of St. Louis County, 330 Mo. 149, 49 S. W. (2d) 135.] While there are entries on defendant's ledger account on and after December 23, 1938, we think plaintiff's evidence clearly shows that the actual transactions which they represent all occurred prior to that date. ''The date when a payment is made, and not when it is endorsed on a note, governs as to its effect under the statute of limitations.'' [1 Wood on Limitations 603, Section 116h(5); see also In re Huger, 100 Fed. 805; Ex parte Storer, 23 F. Cas. No. 13490, 2 Ware 298; J. M. Arthur & Co. v. Burke (Wash.), 145 P. 974.] Thus the actual dates of the transactions involved are controlling on the issue of the bar of the statute of limitations. While there were two *credits* on defendant's account dated December 31, 1938, plaintiff's evidence shows that the transactions

covered by them occurred on November 1938 or prior months. The last cash payment made by defendant to Vancoh shown on its cash received record was on August 4, 1938. Both of these credits were journal entries. One is for $100.00 and it is marked 11/17 both in the journal and on defendant's ledger account. The entry showed it to be a payment on a note of Vancoh held by the Mutual Bank and Trust Company. The memorandum of this transaction on the work sheet, which Harris had at the trial also showed it to be a November transaction. The journal shows that the other item was a composite entry covering three separate transactions totaling $661.23. The memorandum showed these were September, October and November transactions, as follows: $150.00 marked September adjustment, $400.00 marked 10/15, and $111.23 marked 11/21. The journal showed that the $150.00 was paid to Jane Holding Company, the $400.00 to Ann Fine and the $111.23 to "SW Bell T. Co." As to this $400.00 payment, defendant testified that he advanced it to Ann Fine "to pay a doctor bill" because she had not received her salary from Vancoh. Harris testified that none of these items (shown in the December 31st journal entries) were paid to Vancoh but if paid at all were paid by defendant to other parties. Defendant said that he did not authorize any of them to be credited on the Vancoh account and did not know that any such credits were made.

All items for which *charges* were made on defendant's account after April 25, 1938 are marked phone (by ditto marks); and it was the practice for the telephone bill to be paid by a single check and then part of it charged on the books to each person or company using the phone. The cash paid out record shows that up to September 1938 such expense payments were made out of Vancoh's account at the Mutual Bank. Thereafter cash payments are shown on this book to have been made from the account of the Greendale Realty & Construction Company. Thus it appears that all cash transactions between defendant and Vancoh had ceased prior to December 1938.

The 1938 phone bills were paid each month to the Southwestern Bell Telephone Company; then part of the amount paid was allocated to Vancoh, part to Pine Investment Company, and part charged to the account of defendant. (In the latter part of 1938 they were allocated to Greendale and not to Vancoh.) The last payment to the telephone company shown to have been made out to the Vancoh account and partly charged to defendant was on July 25, 1938. The next charge appearing on defendant's account appears as of December 23, 1938 for $15.01. However, this was paid by a check of Greendale and not by Vancoh; so that this was due from defendant to Greendale and could constitute no part of the account of Vancoh against him. Moreover, the pencil figures 11/21 appear with this entry on the ledger sheet indicating it was a November charge. There are two other debit items shown on defendant's account as of

December 31, 1938. Neither of them appear in the Vancoh cash paid out record and are covered by journal entry only. One is for $49.67 and the figures 7/21 and 8/21 appear with it, indicating these were July and August charges. Harris said that, when he saw the Vancoh cash paid record did not show this payment, he found that it was paid with a Greendale check on November 1, 1938. The other item was for $58.34 and the figures appearing with it are 9/21, 10/21, and 12/21; all indicating charges outside the limitation period. Moreover, this was likewise not shown on the Vancoh cash book as paid by it (the journal shows part of it allocated to Greendale and none to Vancoh) so it also must have been due to Greendale or some other person or company. Certainly transactions with Greendale or others cannot be made a part of defendant's account with Vancoh so as to bring it within the limitation period. The journal also shows that during the last years of the operation of Vancoh, Hahn usually made journal entries only on the ▮▮▮ last day of each month, and these did not purport to be the actual dates of the transactions shown. Harris said many of them were adjustments. [As to effect of adjustments see Pettus v. Rawls (Ark.), 198 S. W. 874.] Entries on the records of cash received or paid out, however, did give the actual dates of the receipts and disbursements.

The only other item *charged* against defendant, and the one upon which plaintiff mainly relies as bringing the account within the statutory period is a charge of $3.50 shown on defendant's account as of January 31, 1939. This is based on a journal entry marked Social Security tax "deducted a/c Ann Fine salary pd. for V. R. Co. Oct., Nov., Dec." Here again the cash paid out record shows that the payment made in January to the Collector of Internal Revenue for Social Security tax was paid by Greendale and not by Vancoh. Moreover, Harris testified that this was for tax on the salary paid to Ann Fine by Vancoh for October, November and December. He said there was no evidence in the books as to what date the amount was paid to defendant or withheld by him from her salary; but that it was prior to this entry; and that he regarded this entry as an adjustment. Defendant said he never withheld anything for this tax when he made the advancement to Miss Fine, never authorized any such charge to be made against his account and had no knowledge that the charge had been made. Since the evidence does show that defendant advanced this salary to Miss Fine in October 1938, we hold that this entry more than three months later cannot have the effect of tolling the statute of limitations. Thus it appears, from the consideration of the whole record, that there were no actual transactions between defendant and Vancoh within five years prior to the commencement

of this action. We, therefore, hold that a finding that plaintiff's account was not barred by the statute of limitations, was clearly erroneous. [See Sec. 114d Civil Code, Sec. 847.114d Mo. Stat. Ann.]
The judgment is reversed. All concur.