Commerce Trust Company, Appellant, v. Ralph R. Langley.—9 S. W. (2d) 923.

Division Two, October 6, 1928.

*Cooper & Neel* and *Wallace Sutherland* for appellant.

*C. O. French* for respondent.

DAVIS, C.—The petition comprises two counts, in each of which plaintiff seeks to recover against defendant on a promissory note. The first count prays judgment for $201.56, with eight per cent interest from August 9, 1921, and a ten per cent attorney's fee. The second count prays judgment for $5802.68, with eight per cent interest from August 9, 1921, which, at the time of the trial, aggregated about $2200, and a ten per cent attorney's fee. The jury returned a verdict on each count in favor of defendant, and plaintiff appealed from the judgment entered thereon.

It is unnecessary to summarize the petition further than to say that the counts are actions upon promissory notes. The answer avers that the notes were given without consideration; that the notes were executed by defendant at the request of and for the accommodation of the Midwest Reserve Trust Company, the payee therein, and that the Midwest Company stated it would look to the Consumers Oil Company for payment of the notes.

The evidence most favorable to defendant warrants the finding that, at the time of the execution of the two notes in question, on August 9, 1921, defendant was president of the Consumers Oil Company. Prior to August 9th the Consumers Oil Company had borrowed from the Midwest Reserve Trust Company, hereinafter called Midwest Company, the sum of $17,500, and had executed its note as evidence of the indebtedness. This note was renewed from time to time and payments were made thereon, resulting that the principal, on August 9th, was reduced to $7500. As collateral thereto, the Consumers Oil Company deposited its bonds of the value of $7500. They were part of a $300,000 bond issue and were secured by a trust deed on property of the Consumers Oil Company. The treasurer of the Consumers Oil Company, of which respondent was president, testified that, upon the note for $7500 becoming due, he presented a renewal note to the Midwest Company for $7500, executed by the Consumers Oil Company, but that the president of the Midwest Company said that he desired to change the complexion of said note and would like to have defendant execute a renewal note this time instead of the Consumers Oil Company. The Midwest Company prepared the notes, and the treasurer took them to defendant and reported to him the conversation had with the president of the Midwest Company. The treasurer recommended to defendant that he comply with the request of the Midwest president. Defendant signed the notes, and the treasurer carried them to the Midwest Company. The first note sued on for $201.56 covered interest on the $7500 note. The $7500 note was reduced to $5802.68 through dividends paid on the collateral bonds upon liquidation. Defendant did not receive anything for the notes signed by him. The treasurer stated, on cross-examination, that the president of the Midwest Company said to him that there would be no liability against defendant on the note, for he wanted the note changed to change the complexion of it. The witness repeated these statements to defendant.

The evidence tends to show that the note of the Consumers Oil Company for $7500, which we assume was due on August 9, 1921, and which was secured by collateral, was not surrendered when the notes, signed by defendant, were delivered to the Midwest Company. The Midwest Company continued to hold the note for $7500 of the

Consumers Oil Company and the collateral, but held by it in a separate file from that in which the notes signed by defendant were kept, and this was done at the instance of the president of the Midwest Company. The evidence most favorable to defendant shows that he did not indorse the note for $17,500, or other notes given in renewal thereof, and that no consideration passed from the Midwest Company to defendant, but the notes were executed at the request of and for the accommodation of the payee. The only note of the Consumers Oil Company that defendant was able to find or obtain from the files shows that he did not indorse it. The Midwest Trust Company, shortly after the notes became due, made an assignment for the benefit of creditors, and the plaintiff thereby became the holder of the notes sued on.

There was admitted in evidence, on the part of defendant, two letters written by him, which plaintiff objected to as self-serving. They were written by defendant to an officer of and to the attorneys for plaintiff. They are as follows:

"December 28, 1922.

"Mr. W. S. McLucas
"Commerce Trust Company
"City
"Dear Mr. McLucas:

I have received a notice as per enclosed copy, and am writing Mr. Newman as per copy attached to the notice.

A couple of years ago, Messrs. Rule and Rubey negotiated a $15,000 loan at the Midwest Bank. For several months this loan remained absolutely unsecured. I was not personally on the notes and did not personally negotiate the loan. In an adjustment of the Consumers affairs, I was able to pay half of the $15,000 in cash and gave them a new note for the remaining one-half with these Consumers secured notes as collateral. That certainly was putting the original loan in much better condition than it formerly had been in. The Midwest Bank was formerly in the position of an unsecured creditor. I was not a personal endorser on the note but I changed their position from that of an unsecured creditor of $15,000 to a secured creditor of $7500.

I do not just now recall the language of the persuasion or the reason for their wanting to substitute my personal note for the note of the company, but it was for some reason other than to hold me personally liable for the obligation.

While I do not feel and am satisfied that I could show that there is no legal liability, I do feel a moral responsibility and if I am allowed to work the matter out along lines which we have carefully and quite successfully developed, the bank will get all of the

principal and interest without embarrassment or harm or loss to any of us.

I have therefore written Mr. Newman quite fully on the subject and while I appreciate the fact that this matter is probably not a direct asset or interest of the Commerce Trust Company, still I know that you have sufficient interest in it of some nature, and I hope you have sufficient interest in me personally and in the account of this company, which we intend to leave with you regardless of your action in this case, to have the matter handled along the lines indicated in my letter to Mr. Newman, thus saving me considerable embarrassment and the Midwest Bank, or its successor, considerable loss.

"Yours very truly."

———

"January 16, 1923.

"Cooper, Neel & Wright
"Keith & Perry Bldg.
"City
"Gentlemen:

Your favor of January 10 relative to the notes formerly held by Midwest Reserve Trust Company and executed by me, received.

I suggest that you ask Mr. Newman or Mr. McLucas of the Commerce Trust Company for our correspondence on this subject, especially for a letter I wrote them about the first of the year.

While my personal note was merely given as an accommodation in lieu of a Consumers Oil Company note at the request of the Midwest Bank, I naturally feel a moral obligation in the matter and will work it out and see that the bank gets its money if I am given the necessary time and assistance in doing so as I have explained and suggested to the bank, and with which suggestions I am quite sure they are agreeable.

Right now I am exceedingly busy endeavoring to complete the arrangements with which you are somewhat familiar, between the Ranger Refining & Pipe Line Company and our own company, and as soon as these matters are a little further along, I will arrange a conference between one of your firm, the Commerce Trust Company and myself, and think there will be no difficulty in working this matter out to the satisfaction of the interested parties.

Yours very truly."

I.   On the ground that they were self-serving, plaintiff contends the trial court erred in admitting in evidence the preceding letters. In admitting them in evidence, the trial court gave as its reason for so doing this they tended to explain other letters admitted in evidence in behalf of plaintiff, thus constituting a portion of the cor-

respondence. The facts develop that plaintiff introduced in evidence seven letters, relating to the notes in controversy, written by defendant to officers of plaintiff. The letters were dated November 20, 1921, and January 18, 19, April 3, 5, 15, and December 28, 1922, respectively. Plaintiff argues that, by the use of certain expressions in the letters introduced by it, defendant directly admits liability on the notes, but for the purposes of this discussion the determination of the contention is immaterial. The gist of the seven letters was that defendant could not then pay the notes, but that he expected to refinance the Consumers Oil Company and that he was very sure he could handle the situation without embarrassment or loss to anyone, if permitted to do so, otherwise there would be some embarrassment and undoubtedly some loss.

Neither upon principle nor precedent were the preceding letters received in evidence by the court in behalf of defendant admissible. The letters constituted self-serving declarations, favorable to the interest of defendant. The letters were not shown to have been answer, nor was it shown that plaintiff replied, assenting to the same. The letters plaintiff objected to argumentatively presented defendant's views as to his non-liability on the notes. While plaintiff did not answer defendant's letter, we know of no rule of law that regards the failure to answer a letter, containing self-serving declarations, as an admission against interest. Such a rule would permit one party to fortify and bolster his contemplated testimony, and thus obtain an advantage over another by means of self-serving declarations put in letters written to his adversary. The cupidity of men would render the enunciation of any other rule of doubtful propriety. A persuasive case is Fearing v. Kimball, 4 Allen (Mass.) 125, 81 Am. Dec. 690, which holds that a party will not be permitted to read in evidence an unanswered letter from himself to the adverse party, for the purpose of proving the truth of the facts stated therein, although it was in reply to a letter to himself, which had been read in evidence. In Tucker v. Frederick, 28 Mo. 574, it was said: "and her declarations made after the attachment were clearly inadmissible to explain away the effect of previous declarations." The cases of Clark v. Huffaker's Admr., 26 Mo. 264; Hammond v. Beeson, 112 Mo. 190, 20 S. W. 474; Townsend v. Schaden, 275 Mo. 227, 204 S. W. 1076; and Varley Duplex Magnet Co. v. Ostheimer, 159 Fed. 655, 86 C. C. A. 523, are also persuasive. Because the letters were self-serving, the trial court erred in permitting them to be introduced in evidence.

II. We deem it unnecessary to discuss the other errors assigned. For the error determined, however, which we consider prejudicial,

the judgment is reversed and the cause remanded. *Higbee* and *Hcn-·wood, CC.*, concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.