A. H. SHUMATE v. ESTHER HOEFNER and ROSCOE REYBURN, Appellants.
—147 S. W. (2d) 640.

Division One, February 14, 1941.

*James E. Campbell, Charles B. Turney* and *Harding, Murphy & Tucker* for appellants.

*Adams, Adams & Adams* for respondent.

CLARK, J.—Defendants (appellants) appeal from a decree setting aside a trustee's deed under foreclosure of a deed of trust.

The chancellor made a detailed finding of facts which we condense and rearrange as follows: in 1923 appellant Reyburn owned the property in controversy, holding title in the name of a "straw man;" he sold the property and caused it to be conveyed to R. B. Baker subject to a first deed of trust for $3,500 and a second deed of trust for $2,250; the second deed of trust·was payable $40 per month to a "straw man" and immediately endorsed over to Reyburn without recourse; respondent purchased the property June 29, 1932, under a contract which mentioned the first deed of trust, but not the second; on July 7, 1938, respondent received a letter from Reyburn stating that he held the second deed of trust and that a balance of $50 principal and $30.50 interest was due; respondent went to Reyburn and stated that he would pay the indebtedness, but wanted time to confer with Baker to see why the land was sold to him free of the deed of trust; if Reyburn insisted he would pay him at any time he could call at respondent's store at 1505 East 12th Street; Reyburn consented to this arrangement and respondent was thereby lulled into a sense of security; the trustee named in the deed of trust being dead, Reyburn caused the sheriff to advertise and sell the property under the deed of trust and convey it to appellant Hoefner on October 28, 1938; at the request of Reyburn, the property was bid in by one Willis for appellant Hoefner; Willis bid $150 which he paid and which was afterward repaid to him by Reyburn; appellant Hoefner was acting for appellant Reyburn; the value of the property is $2,750; the sum of $455 was still due on the first deed of trust; if any of the principal sum was due under the second deed of trust, it was $50; the costs of sale totaled $40.94 which was deducted from the bid and the difference, $109.06, was paid to and receipted for by Reyburn; the excess of the bid over the balance of the note and costs was never paid to respondent, but was kept by Reyburn; Reyburn knew the address and telephone number of respondent; the notice of sale was published in a newspaper and no notice was sent to respondent, as is the custom in Kansas City; respondent had no actual knowledge of

the running of the notice; the deed of trust provided for sale at the south front door of the old courthouse at Fifth and Oak Streets; the sale was held at the north front door of the new courthouse at Twelfth and Oak Streets; the property was sold at a grossly inadequate price; respondent was not present at the sale, due to the fact he had no knowledge thereof and had been lulled into a sense of security by Reyburn; respondent was deprived of his statutory right to redeem by his lack of knowledge of the sale and Reyburn's use of ·a straw purchaser; in his petition respondent offered to do equity by paying the amount claimed by Reyburn to be due on the note together with the costs of foreclosure; he renewed this offer in open court and deposited sufficient money therefor, to-wit, $121.44.

The decree ordered the clerk to pay the amount so deposited to Reyburn in full satisfaction of the note; that the trustee's deed be canceled and set aside and the title vested in respondent.

Appellant's assignments of error are directed at the sufficiency of the evidence to support the chancellor's finding of fact. The points briefed and argued by appellants are: that the chancellor properly found that the note had not been paid at the time of foreclosure; that, if Reyburn promised respondent he would not foreclose until he notified respondent, the promise was without consideration and unenforceable; that the evidence fails to show such promise; that appellant Hoefner had no knowledge of the conversation between Reyburn and respondent and is not bound by the alleged fraud of Reyburn; that neither Reyburn nor the sheriff were required to give personal notice of the foreclosure to respondent; that the price paid at the foreclosure sale was not inadequate and, even if it was, that fact alone does not justify setting aside the trustee's deed.

This being an equity case we are not bound by the chancellor's finding of fact, but must, of necessity, give great weight to such finding. This rule of law is conceded by both appellants and respondent, but each seeks a different application of the rule. Respondent says the chancellor did not find that there was a balance due on the note at the time of foreclosure and, if he did, the evidence is insufficient to support such finding, but respondent wants us to defer to the chancellor's finding on all other questions. Appellants say that the chancellor did find that the note was not fully paid and we should defer to such finding, but that the evidence is insufficient and we should not defer to his findings on other controverted issues. The following language is used by appellants and, we think, gleefully adopted by respondent: "Even though this is an equity case, this court will not lightly overturn the finding of fact made by the trial court."

The abstract shows that the chancellor gave a special finding of fact, number 3 requested by appellants, which contains the following statetment: "That on or about July 7, 1938, there was a balance

due and owing on the aforesaid promissory note secured by said second mortgage deed of trust, in the amount of $50 principal, with accrued interest thereon." On this issue there was sharp conflict in the testimony. Baker, the maker of the note, testified from memory that he had fully paid it. Reyburn, the holder of the note, testified that there was a balance due. The note was introduced with the credits thereon. Most of the credits were undated. Certain notations on the note were claimed as credits by respondent and denied by appellants. The evidence is uncertain and confusing and there are circumstances corroborating the claim of payment, but the burden of proving payment was on respondent. The chancellor saw and heard the evidence and his opportunity to rightly weigh it was better than ours. We defer to his finding and rule this point against respondent.

Appellants say that, if Reyburn promised to delay foreclosure, such promise was without consideration and unenforceable, citing authorities. That these authorities correctly state the law, is not denied by respondent. This promise is not relied on by respondent as an enforceable contract. His claim is: "When the mortgagee lulls the owner of the equity of redemption into a sense of security and then forecloses the mortgage, without giving actual notice to the owner, courts of equity have uniformly set aside the foreclosure sales." That is a correct statement of the law. [Laundy v. Girdner (Mo.), 238 S. W. 788, l. c. 789; Clarkson v. Creely, 35 Mo. 95; Daggett Hardware Co. v. Brownlee, 186 Mo. 621, 85 S. W. 545.]

Did Reyburn, by his words and conduct, induce respondent to believe that foreclosure would be delayed until respondent should receive personal notice? Here again the evidence sharply conflicts. The chancellor could believe either Reyburn or the respondent. We cannot say he erred in believing respondent. In fact, there are circumstances which support the chancellor's view on this question as well as on other controverted issues. Respondent bought the property in 1932. Until July, 1938, he had no actual knowledge of the existence of a second mortgage. During that time no payment had been made on the note and no demand had been made on him or any one else for payment. After Reyburn notified respondent in July, 1938, that he held the note and claimed a small balance due, it is undisputed that respondent asked for time to find and confer with Baker, the man who had sold him the property. Baker then was a retired physician, had moved his residence and neither Reyburn nor respondent knew where he lived. By inquiry and correspondence, respondent tried to locate Baker, but did not find him until after the foreclosure sale. Some time prior to the foreclosure Reyburn told respondent that he thought Baker was dead. Then respondent says he told Reyburn "I will be over in a few days and pay you, or you can come to the store and get the money," giving him the location, and that Reyburn said "all right." Respondent says he did not hear from Reyburn again.

Reyburn says he talked to respondent several times by telephone, demanding payment and threatening foreclosure. It developed at the trial that on August 10, 1938, Reyburn wrote to respondent threatening to start foreclosure, addressing the letter to the street address of the property in question which was occupied by respondent's tenant; that this letter was returned to Reyburn unopened; that Reyburn wrote respondent's correct address on the envelope, but did not remail the letter. Reyburn ordered the sheriff to start foreclosure. He arranged with a man named Willis, who has occupied the same office and the same double desk with him for many years, to bid in the property at the sale in the name of the other appellant, Miss Hoefner. Reyburn had been keeping company with Miss Hoefner. Miss Hoefner did not talk to Willis and did not attend the sale. Reyburn and Willis attended the sale and both made bids. Willis' bid of $150 was the highest. He paid that sum to the sheriff and Reyburn repaid him. Then Reyburn received from the sheriff the full amount of the bid less the costs of the sale. The amount so received by Reyburn was more than the costs of sale plus the amount he claimed to be due on the note; yet, up to the time of trial, he had not offered to pay the surplus to respondent. At the trial Reyburn claimed to have a note from Miss Hoefner for $160, upon which no payment had been made of either principal or interest.

The chancellor found the value of the property to be $2,750. There was evidence upon which to base this finding. Willis placed the value at $1,250, but he can hardly be regarded as wholly disinterested.

Inadequacy of consideration alone, unless so great as to shock the conscience, is insufficient to set aside a deed; but inadequacy of price is always a circumstance to be considered in connection with other grounds. [Judah v. Pitts, 333 Mo. 301, 62 S. W. (2d) 715, l. c. 720.]

It is urged that the alleged fraud of Reyburn cannot be imputed to appellant Hoefner. The chancellor found that Miss Hoefner was merely acting for Reyburn. We think the circumstances already detailed give some support to that finding. Besides, although the petition charged her with aiding Reyburn in his alleged fraudulent conduct and she was personally served with process and filed answer, she did not appear at the trial to refute the charges. This creates an unfavorable circumstance against her. [Stephenson v. Kilpatrick, 166 Mo. 262, 65 S. W. 774.]

Appellants urge that neither Reyburn nor the sheriff were obligated to give personal notice of the foreclosure sale to the respondent. Under ordinary circumstances that would be true, but the chancellor's finding is that Reyburn promised to give such notice and thereby lulled respondent into a sense of security.

On the record we find no reason to disagree with the finding of the chancellor. Accordingly, the decree is affirmed. All concur.