Frank HUSSEY and Effie Hussey, Plaintiffs-Appellants,

v.

George O. ROBISON, Clara L. Robison, and George B. Higgins, also known as Otto C. Backer, Defendants-Respondents.

No. 44798.

Supreme Court of Missouri.

Division No. 1.

Dec. 12, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 9, 1956.

Earl Roberts, Steelville, Roy V. Selleck, Rolla, and White & White, Rolla, for appellants.

Breuer & Northern, Rolla, for respondent Backer.

Routh & Hecke, Rolla, for respondents Robison.

VAN OSDOL, Commissioner.

This action in equity was instituted by plaintiffs Frank Hussey and Effie Hussey, husband and wife, for the cancellation of a note, a deed of trust, a trustee's deed and a subsequent warranty deed. The case involves title to two lots with house thereon in Reitz's Subdivision of St. James Township, Phelps County.

Plaintiffs became the owners of the described property in 1942. February 12, 1948, plaintiffs borrowed $400 from defendant Otto C. Backer who "once in a while" used the name "George B. Higgins" in transacting business. The $400 note was secured by a deed of trust to one Houk, trustee, and George B. Higgins was named as payee and beneficiary. June 16, 1953, Houk, trustee, sold the described real property and conveyed to defendant Otto C. Backer by trustee's deed dated June 16, 1953. Defendant Backer, by warranty deed dated June 17, 1953, conveyed the property to defendants George O. Robison and Clara L. Robison, husband and wife.

It was alleged by plaintiffs that they had paid the note secured by the deed of trust; and that defendants, the Robisons and Backer, had knowingly and willfully conspired to sell under the terms of the deed of trust so that defendants, the Robisons, could acquire the property, although, as stated, plaintiffs assert the $400 note evidencing the debt secured by the deed of trust had been paid. The trial chancellor, having heard the evidence introduced in support and in refutation of plaintiffs' claim, found the issues in favor of defendants and directed the rendition of a judgment of dismissal. Plaintiffs have appealed.

Plaintiffs-appellants have complained of errors in finding against them, and in the admission and exclusion of evidence. It is not necessary for us, however, in reviewing this action in equity and having the entire record before us, to examine questions of errors of the trial court in ruling on the admissibility of evidence. In reviewing such a case the appellate court considers such of the evidence as it deems admissible, and excludes from consideration evidence improperly admitted. The appellate court determines the cause *de novo*, weighing the competent evidence in-

troduced upon the factual issues; and, although the appellate court will usually defer to the findings of the trial chancellor where there is conflicting oral testimony involving a judging of the credibility of witnesses who appeared before him, the appellate court cannot forego its duty of weighing the competent evidence and reaching its own conclusions. Edinger v. Kratzer, Mo. Sup., 175 S.W.2d 807; Cobble v. Garrison, Mo.Sup., 219 S.W.2d 393; Middelton v. Reece, Mo.Sup., 236 S.W.2d 335; Ash Grove Lime & Portland Cement Co. v. White, 361 Mo. 1111, 238 S.W.2d 368.

◼ The cancellation of deeds is an exercise of one of the most extraordinary powers of a court of equity. Such power should be exercised only when the evidence clearly justifies it. Allen v. Kelso, Mo. Sup., 266 S.W.2d 696; Tweed v. Timmons, Mo.Sup., 253 S.W.2d 176. Plaintiffs had the burden of proving their equitable claim, especially of establishing the alleged payment of their secured obligation, the $400 note, a default in the payment of which would justify a trustee's sale. Shumate v. Hoefner, 347 Mo. 391, 147 S.W.2d 640.

The evidence introduced by the parties, plaintiffs and defendants, was involved and not coordinated, cogent or clear. This was due in part to the fact that plaintiff Frank Hussey, the principal witness in plaintiffs' behalf, is an uneducated man. He can neither read nor write. He signed the $400 note and deed of trust (and other instruments introduced into evidence) "by mark." And defendant Backer, it seems, suffered a head injury sometime after the transactions and events giving rise to the issues here, so that he, in testifying, had a dim recollection of the effect, the dates, and the amounts of monies handled in various transactions, and of the sequence of events relevant to the initial and decisive issue of the case—the payment vel non of the $400 note secured by the deed of trust under which plaintiffs' property was sold. Now plaintiff Frank Hussey testified that the note (and other obligations) had been paid; and defendant Otto C. Backer (here-

inafter sometimes referred to as "defendant") testified that the note (and other obligations) had not been paid.

In addition to the money borrowed, evidenced and secured by the $400 note and deed of trust herein (which note and deed of trust, as stated, were executed February 12, 1948), plaintiffs had borrowed other monies of defendant (Backer), and of others. The circumstances of the transactions in incurring these other obligations and the circumstances of their total or partial payment are so much related to the issue of the payment of the $400 note that these circumstances are relevant here.

November 16, 1946, plaintiffs borrowed $200 from Fred A. or J. M. Cameron. Plaintiffs executed their note to the Camerons and a deed of trust, securing the note, describing the parcels of land involved herein. the amount of this secured debt was reduced by payments to $65 (or $72.50) at a time when defendant purchased the note from the Camerons. This note was cancelled June 18, 1953, two days after the trustee's sale on June 16, 1953, under the deed of trust of February 12, 1948.

October 1, 1947, plaintiffs executed their note for $700, due six months after date, George B. Higgins, payee. The note was secured by a deed of trust on the described lots involved herein. This note was surrendered for cancellation of record June 18, 1953, two days after the trustee's sale of June 16th.

October 22, 1947, plaintiffs borrowed $372 of the Bank of Sullivan, payable in monthly installments. The note seems to have been secured by a chattel mortgage on a Chevrolet truck. This note bears endorsements of various payments thereon aggregating $372, the last of which ($60) was purportedly by "L. Hussey," August 14, 1948, although the note discloses perforations indicating the note was paid July 31, 1948.

April 30, 1948, plaintiff Frank Hussey executed a chattel mortgage to secure a note for $650 payable in installments, de-

fendant Backer, payee. The mortgage described an "Armstrong Well Drill No. 3" and one Dodge sedan.

There was also evidence tending to show that plaintiff Frank had borrowed $219.60 from defendant "on a Chevrolet truck" in November, 1947.

As stated, plaintiff Frank Hussey testified that, when the described lots of real property were sold by the trustee, June 16, 1953, plaintiffs were not indebted to defendant (Backer). In fact, plaintiff Frank testified defendant then owed $300 to plaintiffs, assertedly because defendant had failed and refused to pay plaintiffs $300 due them in a transaction (more particularly noticed infra) involving the Dodge sedan (described in the chattel mortgage of April 30, 1948).

Plaintiff Frank testified he had paid the $700 note of October 1, 1947, by payments made during 1948 in the amounts of $250, $150, and $180, and "then just a few dollars along until things were caught up with." Plaintiffs' daughter testified she had accompanied her father, plaintiff Frank, when he had driven to St. James to pay monies to defendant, but she had not gone into defendant's office with her father; she said she remained seated in the truck, awaiting her father's return.

Plaintiff Frank testified that he had paid the $400 note by selling or turning over the Dodge sedan to defendant for an agreed consideration of $700 of which $400 was to be applied in payment of the $400 secured note, and the remaining $300 was to be paid over in cash to plaintiffs. At the time, according to the testimony of plaintiff Frank, defendant Backer did not have the $400 note and deed of trust at hand, but said he would "settle this up a few days later." This was in 1949. Apparently defendant Backer did not pay the $300 to plaintiffs at the time or thereafter, and plaintiff Frank shortly after was hospitalized because of a serious spinal disorder. He remained in the hospital for nearly a month, and was bedfast for nearly a year. He said he had often requested defendant

to pay the $300, but made no explanation of his failure to require the payment thereof when the Dodge sedan transaction was consummated, other than to say that, "right that morning he (defendant Backer) was too busy."

In this connection, defendant in his testimony took the position that he had not taken over or purchased the Dodge sedan but had "financed" a transaction by lending money (on the car) to plaintiffs' son-in-law, Robert Copeland, now deceased, who bought the sedan from plaintiff Frank. "I (defendant) don't know how much he (plaintiff Frank) sold it to him (Copeland) for. * * * Mr. Hussey didn't pay me anything"; but the money defendant collected from Copeland, as the Copeland note "went down and down"—he "stuck it" in his pocket. However, defendant does not contend the $650 debt was not paid by monies collected from Copeland or paid by plaintiffs or paid by lessees or purchasers of well drills, one of which drills (and the Dodge sedan) was described in the chattel mortgage of April 30, 1948, securing the $650 obligation. Defendant denied it was understood that any of the proceeds of the Dodge sedan transaction was to be applied on the $400 obligation.

April 7, 1948, plaintiff Frank leased or contracted to sell two well drills to two of his brothers who subsequently paid $260 (or $360) to defendant. It is assumed these payments were by arrangement paid to defendant to take up plaintiffs' note payable to the Bank of Sullivan; however, the Hussey brothers did not continue as lessees or consummate their purchase of the well drills.

Theretofore, on some undisclosed date, no doubt prior to March 16, 1948, plaintiff Frank had sold the Armstrong well drill to one Charles Johnson who executed a secured $892 note to plaintiff Frank as part of the purchase price. Plaintiff Frank testified that the $892 note and chattel mortgage executed by Johnson were held by defendant as collateral security for the money ($650) plaintiff Frank borrowed on the well drill and a $700 mortgage on the "house and lots." Plaintiff Frank spoke of

his debt on the well drill and a $700 note secured by a deed of trust as being "all in the same mortgage." It was not made clear that the $700 note and deed of trust were or were not the $700 note and deed of trust of October 1, 1947. Plaintiff Frank testified as follows,

"* * * I borrowed the $700.00 and I gave him security on the well drill and the house for the $700.00. Then during the time, I had security on the well drill machine for $892.00 and Otto Backer also holds that with this for security. * * * Well, that is the same time I mortgaged this property for $700.00, and this well drill and this $892.00 security all stood in the same pot together for the same purpose. They all went together. Otto Backer took it all for one purpose.

"Q. In other words, you gave him a Deed of Trust on your house and lots for $700.00? A. Yes.

"Q. And you also left this note, chattel note on that well drill there to secure the same $700.00? A. That is right.

"Q. But $892.00 was due you from Charlie Johnson and not due from you to Backer? A. Yes, sir, it was due to me on the mortgage, see. It was coming to me but Backer held the mortgage and collected the money."

Plaintiff testified he paid the $650 note with four hundred and "some odd dollars" out of $500 he had received of Johnson as part of the purchase price of the Armstrong well drill, and with "close to $300.00, something like that * * * in payments as I dug wells."

Herein, plaintiffs stress their interpretation of a letter written by defendant Backer to Charles Johnson on March 16, 1948, as follows,

"This is to inform you that Mr. Frank Hussey was here yesterday March 15 and wanted me to give him that mortgage on the well drill but I refused to give it to him as I held same as extra security for the mortgage on the house.

"He then stated that he would get me my money and this morning he brought me a check and I had to deliver the mortgage to him.

"Now it will be between you and him to make a settlement on the drill/as I am out of it."

It may well be that defendant Backer, in referring to the mortgage which he "had to deliver" to plaintiff Frank, was referring to the mortgage executed by Johnson on the Armstrong well drill. It seems the letter could be reasonably construed as an admission of the completion of the payment of a $700 mortgage on the house, if we consider plaintiff Frank's testimony that the Johnson note and mortgage were held by defendant as collateral security for the payment of a debt or debts evidenced by the $650 and $700 notes. In any event, we do not believe this letter should be construed as an admission that the $400 note involved herein was paid "by check" on March 16, 1948, as plaintiffs would have us construe it. We have hereinbefore noted that plaintiff Frank testified the $400 note was paid out of the proceeds of the Dodge sedan transaction in 1949. And here we also note that the chattel mortgage securing $650 was of date April 30, 1948, several weeks after the Backer letter to Johnson of March 16, 1948.

Referring now to the unpaid balance of plaintiffs' note to Cameron—plaintiff Frank testified this amount (something like $65 or $72.50) was retained by defendant when the $400 loan was made, being deducted from the consideration for the $400 note involved herein; and that as a part of this money borrowed defendant had also undertaken to pay the Hussey obligation to the Bank of Sullivan, but had failed in part so to do.

Defendant Backer testified he had recieved only $260 from the Hussey brothers. This money, he said, was applied in payment of the Hussey note at the Bank of

Sullivan. He testified that he paid the Bank of Sullivan "the last—the balance coming to them," and "picked up this note from the bank." He testified that plaintiffs, at the time of the trustee's sale, June 16, 1953, were indebted to him in the amounts of $400 (the note involved herein), $700 (note of October 1, 1947), and the balance due on the note originally made payable to the Camerons, plus interest.

■ In our review of this case we have not considered four letters written by defendant Backer to plaintiffs during the year 1952. In these letters, defendant Backer asserted and reasserted the amounts of plaintiffs' mortgages then unpaid and "due me on your property at St. James," as follows—$700, $400, and the unpaid balance plus interest on the Cameron note. It should not be said that plaintiffs had, by any silence or inaction on their part, admitted the statements (in defendant's letters) of the amounts then due defendant were true, even if the circumstances of plaintiffs' receipt of the letters were considered as calling for a duty to act or to reply in denial of the truth of these statements. It is clear from the defendant's letters that plaintiffs were not conceding or admitting the truth of the stated amounts of their indebtedness, inasmuch as defendant's letters (in themselves) disclose that plaintiffs (during some interim between the letters) were personally or by letter complaining that defendant Backer had not credited plaintiffs with the amount received by him on the sale of the Dodge sedan, and had not applied or accounted for the amounts he had collected from the Hussey brothers. The letters show no more than the fact of a controversy, and defendant's version of it, as to the amounts, and the payment or non-payment of plaintiffs' indebtedness. We believe the letters were self-serving and inadmissible. Commerce Trust Co. v. Langley, 321 Mo. 124, 9 S.W. 2d 923. Neither have we considered a statement (or purported record) of the financial or business transactions of the parties, plaintiffs and defendant Backer. This statement was prepared by plaintiffs' daughter from information given her by her father, plaintiff Frank Hussey. It was not made in the regular course of business at or near the time, but after the occurrence of the transactions which are purportedly reflected in the items of the statement. It seems the statement was made up in its entirety at one time and at a time when defendant Backer was threatening foreclosure. We think the statement was hearsay and inadmissible.

The trial chancellor was of the opinion the oral testimony touching upon the issue of payment was not clear and convincing. With this we agree. The testimony of defendant was not satisfactory in tending to clear up the circumstances, effect, or terms of these involved transactions and their bearing upon the issue of the payment of the $400 obligation. Defendant had difficulty in understanding, and often misunderstood the questions propounded by counsel. He was unable to consecutively or clearly detail the circumstances of any transaction in their entirety. The trial chancellor did not consider defendant's testimony of great weight. The chancellor thought defendant Backer's testimony was not very valuable—"He is hazy, can't remember; a few things he did remember" didn't amount to much. But it appears from the chancellor's remarks transcribed in the record that he did give weight, perhaps decisive weight, to the letters of defendant written in 1952, which letters, as stated supra, we have put aside and do not here weigh or consider. Therefore, in reviewing this case, we have not had the benefit of a trial chancellor's findings on the conflicting (and "uncertain and confusing") evidence as did this court in the case of Shumate v. Hoefner, supra. We are obliged to weigh the equivocal evidence as disclosed by the cold record and to rely in part on inferences tenuously drawn from the conduct of the parties; to examine the inconsistencies in the evidence tending to support and to refute plaintiffs' claim; and finally to give regard to the burden of proof and the quality of evidence essential to carrying the burden of proof in sustaining a case such as this where the extraordinary power of a court

of equity is sought to be invoked in the cancellation of deeds. As we have said, the testimony of plaintiff Frank and of defendant Backer was in conflict, and the testimony of neither was free of inaccuracies and inconsistencies.

 Now we believe the fact that the instruments—note and deed of trust evidencing and securing the $400 debt—were and remained in the hands of defendant after the time of the asserted payment is a fact we may consider on the issue of payment; and there is a complete absence of any kind of documentary evidence tending to show the payment of the $400 obligation. Plaintiffs did not take a definite position on the issue of payment of the $400 note. Plaintiff Frank testified the note was paid out of the proceeds of the Dodge sedan transaction in 1949, yet urges us to construe the letter of March 16, 1948, as an admission of the payment of the $400 note by check in 1948. If the Dodge sedan transaction was a sale to defendant Backer as plaintiff Frank said it was, and if the $400 of the $700 purchase price satisfied plaintiffs' $400 indebtedness to defendant and defendant was to pay over $300 to plaintiffs, it is unusual that plaintiffs did not require the payment of the $300 assertedly due them, at the time the Dodge sedan transaction was consummated. Although it is true that plaintiff Frank is an uneducated man and said he implicitly relied upon defendant's integrity in these numerous transactions, yet the evidence shows plaintiff Frank is a man not inexperienced in business affairs. It is also unusual for plaintiffs to have so carelessly failed to request or require of defendant vouchers or receipts for the asserted payments, and for plaintiffs to await the relief sought by this their equitable action, instituted March 22, 1954, several months after the trustee's sale, at a time when defendant because of injury was unable to recall and definitely state the facts and details of the parties' agreements and understandings. In conclusion, we say we are of the opinion plaintiffs have not sustained their burden of proving by convincing evidence that the

secured $400 note of February 12, 1948, had been paid.

The judgment of dismissal should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.