Harry F. EUGE and Harvey F. Euge, Appellants,

v.

Arthur F. C. BLASE, Kenneth A. Blase and Anita Wellborn, Respondents.

No. 47828.

Supreme Court of Missouri, Division No. 1.

Oct. 10, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 14, 1960.

Harvey F. Euge, St. Louis, plaintiff-appellant pro se. for both plaintiffs.

Albert E. Hausman, St. Louis, for respondents.

HOLMAN, Commissioner.

Action in equity to set aside a foreclosure sale and the trustee's deed executed pursuant thereto. The property involved is a lot located at 5529 South Broadway, St. Louis, Missouri, upon which is located "an old filling station building." Plaintiffs are father (Harry F. Euge) and son (Harvey F. Euge) and they were partners in the ownership of various parcels of real estate including the one heretofore mentioned. Defendant Kenneth A. Blase was the trustee in the deed of trust and his father, defendant Arthur F. C. Blase, was the owner of the note secured by said deed of trust at the time of the foreclosure sale. The trustee's deed conveyed the property to defendant Anita Wellborn but it is admitted that she was holding the title for Arthur, the real purchaser at said sale. A trial of the case resulted in a finding for defendants and judgment was entered dismissing the amended petition of plaintiffs. Plaintiffs have duly appealed.

Early in October 1954 a deed of trust on certain property of plaintiffs located on Eighth Street in St. Louis was in the process of foreclosure. Arthur Blase was in the business of making real estate loans. One of the plaintiffs received a form letter from Arthur Blase suggesting that he might be able to refinance the obligation and thus save the property from foreclosure. In response to that letter plaintiffs contacted Arthur and as a result of conferences and negotiations Arthur made or arranged for the loan in question. At that time there was a first deed of trust upon the South Broadway property in the original amount of $3,500. The loan made by Arthur was secured by a second deed of trust upon the Broadway Street property and described a note dated October 11, 1954, in the sum of $1,000 payable in monthly installments of $40 principal, and accrued interest. With the proceeds of that loan plaintiffs were able to pay the past due installments on the Eighth Street mortgage and to stop foreclosure sale thereon.

Only two witnesses testified in the case. They were plaintiff Harvey F. Euge and defendant Arthur Blase. Harvey Euge testified that he and his father were delinquent upon the payments on the instant note almost from the time the note and deed of trust were given. He stated that they received many communications from Mr.

Blase concerning those delinquencies; that in each instance he would either call or write Mr. Blase and explain the reason they had been unable to make the payments and would make promises concerning future payments; that each time he communicated with Mr. Blase he (Blase) stated that "he would go along with the situation and work with it"; that about the middle of February 1957 Harry received a letter from Arthur stating that he should see him immediately about the deed of trust; that in response to that letter he (Harvey) went to Arthur's office on February 19 and discussed the situation. In regard to that conversation the witness testified as follows:

"A. I told him that we had it for sale, and we were trying to sell it, we were listing it with Dolan and Company, he said, 'Well, I will have my money anyway, it would come that way, either the people would assume it or have to refinance it, so I would be getting my money, I am protected, so I will go along with the situation until it is cleared up.'

"Q. You mean go along with what situation? A. Our delinquency, our inability to pay at the time. * * *

"Q. Mr. Euge, did you have any particular conversation with Mr. Blase concerning the disposition of this property either one way or the other? A. Mr. Blase told me that before he would foreclose he would definitely give me notice or time that I could refinance it."

Harvey further testified that he never had any notice or knowledge that the property was being foreclosed until after the sale, which was held on June 27, 1957. He denied that he had ever seen a letter giving notice of intended foreclosure which, as hereinafter related, Mr. Blase testified he mailed to Harry Euge on May 20, 1957. He stated that on July 6, 1957, he received a letter from a moving company which caused him to suspicion that there had been a foreclosure sale and he promptly made an investigation and learned that the property

had been sold; that he had caused this suit to be instituted a few days thereafter.

Arthur Blase testified that he was a lawyer but had not practiced for ten years; that the first installment on the note in question became due on November 11, 1954, and when it had not been paid by November 23 he wrote to Harry Euge (the legal title to this property was apparently in Harry Euge, as he alone signed the instant note and deed of trust) advising him that the installments must be paid promptly when due or the deed of trust would be foreclosed; that various payments were made on the note but there were payments delinquent at all times; that plaintiffs made their last payment on the note on July 16, 1956; that in response to a letter Mr. Euge came to his office in February 1957 and "I told him as he knew the deed of trust had been delinquent all the way down the line, * * * that he had made many promises about catching it up and making payments on definite dates, he hadn't kept his promises, we were not going to wait any longer, this was the final opportunity for him to pay up or have a foreclosure, he promised me he would, I forgotten when, but by a certain time take up the delinquencies and upon his promise I agreed to wait until that time, whatever it was, and that time passed and he didn't do it, he didn't pay anything in fact. * * *

"Q. I ask you whether or not in the conversation you had with Mr. Euge, there ever was any conversation between you and him with reference to deferring the trustee sale until such a time he might make a sale on some indefinite prospect or sale he had? A. No, I didn't know he had the property for sale, I didn't know what he was trying to do with it. I never made any such agreement."

Mr. Blase further stated that on May 20, 1957, he mailed a letter to Harry Euge at his usual address which read as follows: "I can't wait any longer for the payment of the delinquencies under the deed of trust on

property at 5529 South Broadway, St. Louis, Missouri. Unless the installments due under this deed of trust are brought up to date, foreclosure of the deed of trust will be instituted without further notice." He testified that he received no response to that letter and ten days later requested that the trustee begin the advertisement of trustee's sale; that the property was sold on June 27 and bid in by him for $300. Mr. Blase testified further that at the time of the foreclosure sale $500 principal, and interest from December 11, 1955, was due upon the note secured by the deed of trust in question; that there was an unpaid balance of $2,300 on the first mortgage at that time. Mr. Blase also stated that he had originally made the loan for his son (apparently Kenneth) but that after it had become delinquent he "gave him his money," took the note back, and at the time of the sale he (Arthur) was the owner of the note.

■ In this case plaintiffs charged both actual and constructive fraud as a basis for the relief sought. The burden was upon them to prove their case by convincing evidence. Upon this appeal "it is our duty to review the case de novo and in so doing we weigh the competent evidence and reach our own conclusions as to the facts, giving due regard, however, to the more favorable position of the trial court to judge the credibility of the witnesses." Fisher v. Miceli, Mo.Sup., 291 S.W.2d 845, 848.

There was no evidence to indicate any irregularity or unfair conduct in connection with the advertisement of the sale or in the manner in which the sale was conducted by the trustee. Moreover, there is no basis for a finding that the price obtained at the foreclosure sale was inadequate as there is no evidence in the transcript concerning the value of the property.

■ The primary contention of plaintiffs is that they were entitled to personal notice of the intended sale from both the trustee and the holder of the note. We have concluded that the facts herein do not sus-

tain that contention. A trustee is only required to advertise the property for sale according to the terms of the deed of trust and need not give personal notice to the mortgagors. Harlin v. Nation, 126 Mo. 97, 27 S.W. 330. A mortgagee is not ordinarily required to give personal notice of the foreclosure sale to the mortgagor. Homan v. Connett, 348 Mo. 244, 152 S.W.2d 1053. It is only where the mortgagee, by words or conduct, has induced the mortgagor to believe that foreclosure will be delayed until personal notice is given that such notice is required. Shumate v. Hoefner, 347 Mo. 391, 147 S.W.2d 640; Edwards v. Smith, Mo.Sup., 322 S.W.2d 770.

The conduct of Arthur Blase was not such as would reasonably lull plaintiffs into a sense of security and lead them to believe that their manner of payment was satisfactory or that he would not foreclose without first giving personal notice. He frequently notified them that they must pay the delinquent installments or he would foreclose. While he did not actually carry out those threats for more than two years the plaintiffs were, nevertheless, almost constantly apprised of the fact that Arthur was dissatisfied with their manner of paying the installments.

Plaintiffs insist, however that in the February conference with Harvey, Mr. Blase agreed not to foreclose without giving further personal notice. The trial court did not file specific findings of fact. However, we may assume that that court either found that no such agreement was made or, if made, that it was complied with by the letter of May 20, 1957. In reviewing the evidence we find as a fact that the notice contained in the letter of May 20 was given to the mortgagor, Harry Euge. Assuming (but not deciding) that Mr. Blase agreed to give personal notice before commencing the foreclosure proceedings, said agreement was complied with and hence it would afford no basis for granting the relief sought.

Plaintiffs also complain of the fact that Kenneth Blase, the trustee, was the owner

of the note during a part of the time in question. In that connection we note that that fact was not alleged in the petition as a ground for relief. However, it developed in the cross-examination of Arthur that he had made the loan for his son but that prior to the sale he had returned his son's money and "took" the note back. It is contended by plaintiffs that those facts afford a presumption of fraud and also that it may be inferred that Kenneth was, in fact, the purchaser at the trustee's sale.

 This court has recently said that "The fact of the trustee's having an interest in the debt and being trustee may be a circumstance for consideration in connection with other facts tending to show fraud or other shockingly unfair conduct on the part of the trustee (Judah v. Pitts, 333 Mo. 301, 312, 62 S.W.2d 715, 720), but the transactions are set aside only when there is present the additional factors of fraud or other unfair conduct." Jackson v. Klein, Mo.Sup., 320 S.W.2d 553, 557. The trustee in a deed of trust may not, without the consent of the maker of the note, directly or indirectly purchase the property at the foreclosure sale. Smith v. Haley, Mo.Sup., 314 S.W.2d 909. However, the difficulty with plaintiffs' contentions is that they are not supported by the evidence. The undisputed evidence is that Kenneth, the trustee, had no beneficial interest in the note at the time of the sale and that the property was purchased by his father, the holder of the note at that time. There is no basis in the evidence for a finding that Kenneth was the purchaser at the sale, either directly or indirectly. The contentions are without merit and are ruled adversely to plaintiffs.

Plaintiffs have attempted to state other points in their brief but those need not be specifically discussed as they are either recitals of abstract principles of law or are the same points we have heretofore discussed, stated in different language. We have fully considered the real contentions of the plaintiffs and have concluded that they do not afford any basis for a reversal of the judgment herein.

Judgment affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.