George E. BAYER et al., d/b/a Markle & Bayer Agency, and General Service Agency, Appellants,

v.

AMERICAN MUTUAL CASUALTY COMPANY, a Corporation, et al., Respondents.

No. 48808.

Supreme Court of Missouri,

Division No. 1.

July 16, 1962.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 10, 1962.

Moss H. Silverforb, Marion Miller and Maurice E. Bensen, Kansas City, for appellants.

Frank C. Rayburn and Winger, Nugent & Rayburn, Kansas City, for respondent, Bill M. Skillman.

Charles H. Howard, Jefferson City, for respondent, Jack L. Clay.

Lewis A. Dysart and George V. Aylward, Jr., Kansas City, for respondent, International Underwriters, Inc.

HOLMAN, Commissioner.

During the year 1950 and for a period of time thereafter George E. Bayer and John Markle were partners in conducting a mutual insurance agency in Philadelphia, Pennsylvania. In 1950 they invested certain funds in the Merchants Mutual Casualty Company of Kansas City, Missouri. (The name of this company was later changed to American Mutual Casualty Company.) The transactions of plaintiffs with Merchants and the other defendants will be hereinafter more fully described.

In 1955 Bayer and Markle filed this suit in which they alleged that their investment in Merchants was made as the result of certain false and fraudulent representations on the part of a number of the defendants. In the first count of their petition they sought to recover $22,150 actual and $150,000 punitive damages and in the second count they prayed for actual damages in the sum of $300,000. George Bayer died in January 1957, but prior thereto, on December 1, 1956, he assigned all of his interest in the claims alleged in the petition herein to John Markle. (We will, however, continue to refer to Bayer and Markle as plaintiffs in referring to events occurring prior to the trial of this case.) At the close of plaintiff's evidence the motions of all defendants for directed verdicts were sustained and, in response to the direction of the court, the jury returned a verdict in favor of all the defendants. Plaintiff has duly appealed from the ensuing judgment.

Plaintiff John Markle testified that he resided in Palmyra, New Jersey; that he and George Bayer had become partners in the operation of a general insurance agency in 1948 with offices in Philadelphia and New-

ton, Pennsylvania; that in the spring of 1950 he read an advertisement in the New Jersey Times wherein Edwin F. Ragland of Kansas City had advertised local mutual insurance companies for sale; that after certain telephone conversations with Ragland he and Bayer went to Kansas City and conferred with Ragland; that they told Ragland they needed a mutual casualty insurance company to go along with their fire companies writing general coverage; that Ragland told them he was a director and attorney for Merchants Mutual Casualty Company and took them to the office of that company where they met Nile Adams, its president; that he asked Nile Adams if the company was in good financial state and he said " 'Yes,' it was an operating company at that time"; that he had a talk concerning the company with a representative of the Missouri Insurance Department who was in the office making an examination, and also talked with an officer of the Union National Bank concerning the solvency of Merchants; that his partner made a trip to Jefferson City and visited the State Insurance Department where he made an investigation concerning Merchants; that he made a number of trips to Kansas City in connection with his transactions relating to Merchants; that a contract was prepared but never signed and was not offered in evidence because he did not at that time have a copy of it.

The testimony indicated that under the law of Missouri a company such as Merchants could accept deposits of money or other assets from investors and that the company was authorized to issue certificates of deposit which would bear interest at a rate designated therein; that the money so deposited could be later withdrawn by the depositor if the surplus of the company was above a designated amount. It appears from the testimony of Mr. Markle and from other evidence that the general plan or agreement between plaintiffs and Merchants was that plaintiffs would deposit with Merchants the sum of $10,000 in cash;

$20,000 in mortgage bonds, and a $50,000 real estate mortgage, and that the addition of said $80,000 to the assets of Merchants would qualify it to be licensed to issue policies other than in the State of Missouri, and that plaintiffs would become agents for Merchants in the issuance of policies in certain eastern states. As a result of these arrangements Bayer and Markle were elected to the board of directors of Merchants. Bayer was elected executive vice president and Markle was elected secretary. The $50,000 mortgage was deposited with the company, as well as certain bonds, but the insurance department refused to approve the mortgage or the bonds so that they could be carried as assets of said company. Plaintiffs did deposit with Merchants the following sums of money on the dates indicated: April 21, 1950, $5,000; June 5, 1950, $5,000; and September 7, 1950, $7,500. Plaintiffs also paid out $2,500 in order to obtain a reinsurance treaty for Merchants with Peerless Casualty Company of Keene, New Hampshire. They also spent $300 in securing a title policy on the mortgage.

Because of these expenditures Merchants, on November 4, 1950, issued a certificate of indebtedness for $20,300 to plaintiffs. The bonds were returned to plaintiffs but the officers of Merchants apparently had some doubt as to their right to surrender the $50,000 mortgage to plaintiffs, and therefore an apparently friendly suit was filed in New Jersey which resulted in a judgment which either canceled said mortgage or caused its return to plaintiffs.

As appears from the foregoing, plaintiffs did not deposit $80,000 in acceptable assets with Merchants and Merchants was never licensed to do business in any state other than Missouri. However, Mr. Markle testified that plaintiffs were given a large number of policy forms and binders and it was verbally agreed that plaintiffs could write excess line insurance in the east, primarily in New York; that excess line risks are risks that have been refused by three licensed companies and, in that event, ac-

cording to Mr. Markle, the risks may be written by a company not licensed in New York; that when the policy forms had all been used plaintiffs, upon telephone authorization of Nile Adams, had other forms printed in the east; that they wrote policies for a period of about five months in 1950 and collected premiums totaling about $65,000; that they did not remit any premiums to the Kansas City office nor send any "dailies" or other record of the policies they had issued to the Kansas City office; that in August 1950, Nile Adams called him and asked what he should do with two claims that had been filed with the Kansas City office on policies written by plaintiffs and was told to send them to Philadelphia where they would be processed. Mr. Markle testified further that in the fall of 1950 Merchants refused to pay any claims on policies they had written, and, its officials in Kansas City denied that plaintiffs had been in any way authorized to issues policies for that company; that as a result of that development plaintiffs were compelled by the insurance department of Pennsylvania to go out of business and they lost profits thereby of $25,000 a year; that plaintiffs were prosecuted in New Jersey for writing insurance without a license and entered a plea of nolo contendere and were each fined one dollar; that there was also a federal prosecution for using the mails to defraud in connection with the issuance of these policies which resulted in a conviction of both plaintiffs and each was sentenced to imprisonment in the federal penitentiary for a term of one year; that the $65,000 collected in premiums was used to pay claims resulting from the policies issued in the east

Plaintiffs also presented as witnesses Robert Hruska, president of International Underwriters, Bernard Cohen, former counsel for the State Insurance Department, Bill Skillman who became a director of Merchants on December 10, 1952, Charles H. Howard, attorney for the receiver of American Mutual Casualty Company, and M. H. Silverforb, an attorney for plaintiff, but there was no testimony admitted from any of these witnesses which would in any manner aid plaintiff in his effort to make a submissible case and therefore their testimony will not be detailed herein.

Defendants in this case are American Mutual Casualty Company, Nile Adams, his wife Mary H. Adams who was a director of Merchants, Lawrence Leggett, Bill M. Skillman, Edwin F. Ragland, International Underwriters, Inc., International Indemnity Exchange, and American Service Life Insurance Company.

At the time this suit was filed Lawrence Leggett was made a party defendant as Superintendent of Insurance of the State of Missouri "in behalf of the policyholders of the American Mutual Casualty Company for their protection of the assets of said company." Thereafter, on January 18, 1957, American Mutual Casualty was permanently dissolved by a decree of the Circuit Court of Cole County, Missouri, and its assets were vested in the Superintendent of Insurance as receiver for the purpose of liquidation. On February 8, 1957, the same type of order was made in the same court in regard to International Indemnity Exchange. On March 15, 1959, International Underwriters, Inc. was adjudged a bankrupt and John H. Denman was thereafter appointed trustee of the bankrupt estate and entered his appearance in this case in its behalf. The Superintendent of Insurance, Lawrence Leggett, by his attorneys, appeared in the trial of the case but he was not made a party as receiver for American until the end of plaintiff's presentation of evidence, at which time, upon motion, he was so made a party and the plaintiffs then dismissed as to defendant Lawrence Leggett in his capacity as superintendent of insurance.

The corporations, other than American, named as defendants were alleged to be "subsidiary" corporations of Merchants (later American) and an effort was made by

plaintiff to trace funds from Merchants into said alleged subsidiary corporations, but no substantial evidence was adduced tending to support that contention.

The petition alleged that defendants Nile Adams and Edwin F. Ragland, as officers and directors of Merchants, and with the consent of the other officers and directors of said company during the period extending from March 1950 to February 1951, made false, fraudulent, and misleading statements and representations, with intent to cheat and defraud plaintiffs. The specific fraudulent representations alleged to have been made to plaintiffs will be hereinafter quoted in connection with our rulings on the questions concerning submissibility.

In the first count of their petition plaintiffs sought to recover as actual damages the amount they had invested in Merchants ($20,300), plus $1,850 legal expenses required in obtaining the return of the mortgage, as well as $150,000 punitive damages. All of the allegations in the first count are incorporated by reference in the second count of the petition, and it is further alleged that the defendants, in violation of their agreement, denied that plaintiffs had been authorized to issue policies for Merchants and as a result thereof plaintiffs lost their business and their "good names, reputations and associations in business" and their "social relations" to their damage in the sum of $300,000.

In ruling the question of whether the evidence was sufficient to make a submissible case we must consider as true every fact and circumstance which plaintiff's evidence tends to prove, give him the benefit of every reasonable inference that may fairly be drawn therefrom, and consider all the evidence in the light most favorable to him. Giambelluca v. Missouri Pacific R. Co., Mo.Sup., 320 S.W.2d 457. Since plaintiff bases his case on fraudulent representations it would perhaps be helpful at the outset to state the general rules applicable in this type of action. "The

elements and essentials of an action for fraud are not in dispute. The rule is stated in 37 C.J.S., Fraud, § 3, p. 215 as follows: 'Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon.' * * * The establishment of each of these essential elements is necessary to a recovery. * * * 'Fraud is never presumed, but must be proven. Yet it is not necessary that it be shown by direct evidence. It may be established by facts and circumstances, and the burden of proof rests upon him who asserts it to make it manifest.' Hardwicke v. Hamilton, 121 Mo. 465, 473, 26 S.W. 342, 344; Orlann v. Laederich, supra [338 Mo. 783, 92 S.W.2d 190]. The difficulty of proving fraud, does not dispense with the necessity of making the proof." Lowther v. Hays, Mo.Sup., 225 S.W.2d 708, 713.

In determining the question of submissibility we will limit our consideration to the allegations and evidence relating to the first count as there is no contention that a submissible case was made as to the second count unless the first count is held to be submissible.

One of the false representations alleged was that Merchants was "in good financial standing, writing insurance business in the State of Missouri by authority of the Insurance Department of the State of Missouri" when "in truth and fact said Merchants Mutual Casualty Company was in financial difficulties and under a direct 'cease and desist' order from the Insurance Department to stop and cease from further writing any insurance business in the State of Missouri or elsewhere until further order of said Insurance Department." In support of this allegation plain-

tiff testified as follows: "So I asked Mr. Adams if the company was in good financial state, and he said yes, it was an operating company at that time." However, there is no proof that said statement was false. Plaintiff completely failed to prove that the company was in financial difficulties or that the insurance department had ordered it to stop writing business at that time. Bill Skillman testified that the company continued to write business until some time in the year 1954.

Plaintiff, however, says that the case was submissible as against the receiver of American because Mr. Howard, one of the attorneys for the receiver, admitted in his opening statement that Merchants was insolvent at the time in question. We quote the following from his opening statement: "Now, we are dealing with a transaction that happened ten years ago, in 1950. I wasn't there, and I can't tell you firsthand what took place. The only thing I can tell you is what I think the evidence in this cause will disclose. I think the evidence in this cause will disclose that * * * two gentlemen well versed in the insurance business, Mr. Markle and Mr. Bayer, were interested in acquiring charters of insurance companies. * * * They began negotiations with Mr. Adams to either buy the Merchants Mutual Casualty Company or to acquire an interest in the company. * * * They were negotiating with the Merchants Mutual Casualty Company, they agreed to put money into the company to build up its assets so to say, to make the company solvent, to give it operating capital, and this was all done in April, June and September, and they did put some $17,500 into the companies."

■ If an attorney in his opening statement makes a clear, unequivocal admission as to a fact, such admission is binding upon his client, but "a mere statement or outline of anticipated proof upon any one or more of the issues in the case is not to be regarded as a binding admission so as ei-

ther to conclude the party whose counsel made the statement or to dispense with the necessity of proof upon the issue on the part of his adversary." Evans v. Sears, Roebuck & Co., Mo.App., 129 S.W.2d 53, 57. See also Wasmer v. Missouri Pac. R. Co., 166 Mo.App. 215, 148 S.W. 155, and Cheatham v. Kansas City Life Ins. Co., Mo.App., 241 S.W.2d 47.

■■ We are convinced that the statement in question may not be regarded as a binding admission that the company was insolvent at the time plaintiffs made the investment. In his preliminary remarks Mr. Howard stated that he was just telling the jury what he thought the evidence would disclose. He then outlined what he thought the evidence would show as to the reason plaintiffs invested money in the company. He was undoubtedly correct in stating that it was to "build up its assets." Under the circumstances, the fact that he added the phrase, "to make the company solvent," will not be construed as an admission that it was insolvent. Moreover, if, as he said, plaintiffs *agreed* to advance the money to make the company solvent, such would not make a submissible case, as it indicates that plaintiffs had knowledge of the financial condition of the company and invested the money in order to remedy the situation.

There is no merit in plaintiff's further contention that a submissible case was made because of the fact that Nile Adams admitted in an affidavit filed in the New Jersey case that the company was willing to return the $50,000 mortgage to plaintiffs, and because counsel admitted that it had been returned. Plaintiff states in his brief that "if they admit that they surrendered the mortgage assigned by reason of suit to recover it and they took back their certificate of indebtedness, then why would plaintiffs not be entitled to receive back the funds that were received from plaintiff and spent for the Mutual Casualty by them." The mortgage was apparently returned as the result of a court action.

The company was willing for it to be returned because the Insurance Department had failed to approve it as an asset. Furthermore, plaintiffs would not have been entitled to a return of the $20,300 unless the surplus of Merchants had been at least $75,000 after the money had been paid out. There is no evidence that there was a sufficient surplus to warrant payment at the time plaintiffs made demand for repayment of the money. Moreover, this action was not brought on that theory and, under the circumstances, the return of the mortgage would not be an admission that the assets had been obtained from plaintiffs as a result of false pretenses.

■ There is another reason why plaintiff cannot recover on the representation in question. His evidence affirmatively shows that he and Bayer did not rely thereon but made their own investigation of the company. Mr. Markle testified that he talked with an officer of the Union National Bank (one of the company's depositories) concerning Merchants' financial condition, and also talked with a representative of the Insurance Department who was then making an examination of the company. He further testified that Mr. Bayer had gone to Jefferson City and made an investigation of the company in the State Insurance Department. As stated, this evidence clearly shows that plaintiffs did not rely upon the representation of Mr. Adams.

■ Another alleged false pretense relied on by plaintiff as a basis for recovery is that "if plaintiffs made an investment to surplus in the said company of $80,000 that said Merchants Mutual Casualty Company would be licensed in other states, and they could and would be capable and allowed to write automobile liability insurance in the State of New York and other states, and that the approval to do so would be secured by the defendants and each of them from the Insurance Department of the State of Missouri, by the consent of the Superintendent of Insurance, which statements defendants and each of them knew at the time they were so made, were false, misleading, deceptive representations." No submissible case was made as to that alleged false pretense for two reasons. First, the representation is not related to a present or pre-existing fact and an action for fraud cannot ordinarily be predicated upon unfulfilled promises or statements as to future events. Reed v. Cooke, 331 Mo. 507, 55 S.W.2d 275. Secondly, it appears that at least one reason why Merchants was not licensed to do business in other states was the failure of plaintiffs to furnish assets of the value of $80,000 which were acceptable to the Insurance Department. It is elementary that plaintiff should not be permitted to recover damages resulting from deficiencies for which he and his assignor were responsible.

What we have heretofore said will indicate our view that plaintiff did not make a submissible case as to any of the false pretenses herein alleged and we accordingly rule that the trial court did not err in directing a verdict for defendants.

■ Appellant has made two points in his brief relating to the admission and exclusion of evidence, but they violate Civil Rule 83.05(e), V.A.M.R., and are entirely too general to present anything for our review. Point IV is as follows: "The court erred in refusing to admit competent, relevant and material evidence offered by appellants. Tr. 57, 61, 88–93, 94, 95, 96, 97, 101, 102, 103, 111, 130, 134, 136, 138, 141, 145, 151, 159, 161, 162, 163, 166, 168, 169, 171, 172, 201, 203, 205, 206, 207, 210, 212, 213, 214, 215, 217, 218, 219, 220, 222, 224, 229, 233, 235, 243, 248, 256, 257, 258, 259, 260. Hussey v. Robison, [Mo.] 285 S.W.2d 603." The entire argument under that point is as follows: "Witness John Markle's testimony was proper and competent, but the trial judge misconceived the issues, admissibility, and proof under the pleadings, and therefore precluded the admission of pertinent testimony. In this we are sure that this court, as it has held and stated in Hussey v. Robison, 285 S.W.

2d 603, 1. c. 605, will completely examine the questions of error of the trial court in ruling upon the admissibility of evidence (Tr. 57 to 260, incl.)."

Apparently appellant's attorneys have completely misconceived the requirements for presenting a point relating to the exclusion of evidence. They have apparently cited every page of the transcript upon which there appears one or more rulings wherein the court sustained an objection to testimony offered by plaintiff. No such testimony is set out in the brief, no reason is stated as to why the ruling was erroneous or prejudicial to plaintiff, and no authorities are cited relating to the admissibility of such evidence. The Hussey case cited by appellant is an equity case in which the court states the well-settled rule that in reviewing an equity case the appellate court will consider only admissible evidence and will exclude from consideration evidence improperly admitted. That rule has no application in the appeal of a case at law in which the appellant desires a ruling upon the admission or exclusion of evidence. We have heretofore said that it is "the duty of an appellant to distinctly point out the alleged errors of a trial court and to show that he was prejudiced by the rulings alleged to be erroneous, and to make specific reference to pages in the transcript on appeal which disclose the bases for the contentions of error in a trial court's rulings. Justice demands that cases be correctly and speedily determined. This cannot be completely and surely done unless the causes appealed and submitted to the appellate court are properly briefed." Jacobs v. Stone, Mo.Sup., 299 S.W.2d 438, 440. As stated, this point presents nothing for our review.

What we have said in ruling Point IV will also dispose of Point V which reads as follows: "The trial court erred in admitting on behalf of the respondents incompetent, irrelevant and immaterial testimony over the objections of the appellants. Tr. 68, 69, 70, 72, 73, 74, 79, 82, 83, 84, 117, 130, 137, 138, 162, 165, 167, 168, 172, 176, 178, 182, 187, 188, 213, 221, 222, 244. Hussey v. Robison, 285 S.W. 2d 603." (This point is not developed at all in the argument.) For reasons heretofore stated, Point V presents nothing for our review.

Defendant Receiver has moved that plaintiff's appeal be dismissed because of the failure of his brief to comply with Civil Rule 83.05, and for other reasons. While the motion has some merit, we have decided that the appeal should not be dismissed and the motion is accordingly overruled.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.